1  BOIES, SCHILLER & FLEXNER LLP
     Stuart Singer (*pro hac vice*)
2  401 East Las Olas Blvd, Suite 1200
   Fort Lauderdale, FL 33301
3  Tel: 954-356-0011
   Fax: 954-356-0022
4  Email: ssinger@bsfllp.com

5  FOOTE MIELKE CHAVEZ & O'NEIL, LLC
     Robert M. Foote (*pro hac vice*)
6    Kathleen Chavez (*pro hac vice*)
     Matthew Herman (*pro hac vice*)
7  10 West State Street, Suite 200
   Geneva, IL 60134
8  Tel: 630-232-7450
   Fax: 630-232-7452
9  Email: rmf@fmcolaw.com; kcc@fmcolaw.com; mjh@fmcolaw.com

10 LEE, TRAN LIANG & WANG LLP
     James M. Lee (CA Bar No. 192301)
11   Enoch H. Liang (CA Bar No. 212324)
   601 South Figueroa Street, Suite 3900
12 Los Angeles, CA 90017
   Tel: 213-612-8900
13 Fax: 213-612-3773
   Email: james.lee@ltlw.com; enoch.liang@ltlw.com



FILED
CLERK, U.S. DISTRICT COURT

DEC 17 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17 ACADEMY OF MOTION PICTURE )   Case No: CV-13-08458-ABC (CWx)
   ARTS AND SCIENCES, a California )
18 nonprofit corporation,            )
                                     )   **FIRST AMENDED COMPLAINT**
19              Plaintiff,           )
                     v.              )
20                                   )
   GODADDY.COM, INC., a Delaware     )
21 corporation, and GODADDY.COM,     )
   LLC, a Delaware limited liability )
22 company,                          )
                                     )
23              Defendants.          )
                                     )
24                                   )
25                                   )
                                     )
26 _____)

27

28

1    Plaintiff, Academy of Motion Picture Arts and Sciences ("the Academy"
2    or "Plaintiff"), a California nonprofit corporation brings this Complaint against
3    Defendants GoDaddy.com, Inc. and GoDaddy.com, LLC (collectively
4    "GoDaddy" or "Defendants"),  and in so doing allege, upon information and
5    belief, except as to allegations specifically pertaining to themselves, which are
6    based on personal knowledge, as follows against Defendants:

7

8                        **SUMMARY OF CLAIMS**

9        1.    This action is brought by Plaintiff seeking redress for GoDaddy's
10   violations of the Anticybersquatting Consumer Protection Act ("ACPA") 15
11   U.S.C.A. § 1125(d), and California Business Professions Code Sections 17200.
12   Said violations arise from Defendants' actions to generate revenue from the
13   unauthorized taking, use, and monetization of Plaintiff's distinctive, famous
14   and valuable marks.  Plaintiff seeks redress for damages caused to it as a direct
15   and proximate result of Defendants' unauthorized monetization, registration,
16   trafficking in, licensing and/or other such use of domain names belonging to
17   and/or that are confusingly similar to Plaintiff's valuable, protected, distinctive
18   and famous marks.  The instant action is related to and supplements a currently
19   pending  action between the same parties asserting the same theories of
20   infringement under the ACPA and related state theories that was filed in May
21   2010, Case No. 2:20-cv-03738-ABC-CW.  In the pending action, Judge Collins
22   has already made several summary judgment rulings, including on June 24,
23   2013 and November 4, 2013.  The instant action asserts claims related to
24   parked pages on additional domain names not part of the pending action.
25       2.    GoDaddy has deliberately taken, infringed, diluted and/or
26   otherwise used, without authorization, the Academy's rights in the OSCAR®,
27   OSCARS®  and  OSCAR NIGHT®, ACADEMY AWARD®, ACADEMY
28   AWARDS® marks (the "Academy's Distinctive & Valuable Marks").  They

                                    -1-

                                         FIRST AMENDED COMPLAINT

1  have done so through the registration, license, use, trafficking in, conversion,

2  and monetization of Internet domain names that are identical to and/or

3  confusingly similar to the Academy's Distinctive & Valuable Marks.

4      3.    GoDaddy achieves monetary gain by using the Academy's

5  Distinctive & Valuable Marks to knowingly divert internet traffic away from

6  Plaintiff's legitimate websites, to infringing parked domains ("Deceptive

7  Domains").    The infringing domains are "parked pages" that have no

8  legitimate business purpose, display no substantive content, and are used

9  exclusively for the display of revenue generating advertisements. Defendants

10 derive revenue each time an internet user is directed to an infringing parked

11 domain and an advertisement is "clicked."  GoDaddy has been, or attempted

12 to, derive revenue from hundreds of such infringing parked domains which

13 demonstrates its bad faith intent to profit from advertising on domain names

14 that are identical to, or confusingly similar to, the Academy's Distinctive &

15 Valuable Marks.

16     4.    Defendants' violations and misconduct have caused damage and

17 losses to the Plaintiff.  Plaintiff has expended significant time and expense in

18 identifying infringing parked pages.   Plaintiff has incurred the additional

19 expense of consulting with attorneys and reimbursing them for the costs

20 associated with numerous cease-and-desist letters to holders of infringing sites,

21 which were rendered infringing by Defendants' services.   Thereafter, Plaintiff

22 incurred the expense of determining whether their cease-and-desist letters had

23 been complied with.  Finally, Plaintiff has suffered loss in the form of dilution

24 of legally-protected trademarks as a result of Defendants' conduct in placing

25 advertisements related to the Academy's marks on parked pages.   This has

26 occurred, and continues to occur, on numerous parked pages as set forth below.

27

28

FIRST AMENDED COMPLAINT

## SUBJECT MATTER JURISDICTION AND VENUE

5.     This is an action for cybersquatting under 15 U.S.C. § 1125(d) and for violations of California statutory and common law. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction pursuant to 28 U.S.C.§ 1367.

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the actual harm to Plaintiff occurred in this District by reason of the Defendants' conduct as alleged below.   No other forum would be more convenient for the parties and witnesses to litigate this action.  California law applies to all state law claims or controversies arising between the parties.

## PARTIES

### A.     PLAINTIFF: THE ACADEMY

7.     The Academy is a nonprofit corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County.

8.     The Academy was founded in 1927 by a group of 36 film industry leaders, who numbered among them Cecil B. Deville, Mary Pickford, Jack Warner and Douglas Fairbanks, for the purpose of advancing the motion picture arts and sciences by promoting cultural, educational and technological achievements. As an incentive for members of the industry to strive toward this goal and as a means of recognizing persons who make outstanding contributions in their respective creative fields, the Academy presents annual "Awards of Merit," known to the public as "Oscars."  The Academy's Awards of Merit are alternatively referred to in the singular as "Academy Award" or "Oscar."   The Oscars are presented during a nationally and internationally televised "Academy Awards" program.

FIRST AMENDED COMPLAINT

9.     The Academy owns the ACADEMY AWARD® and ACADEMY AWARDS® marks, which it has registered with the United States Patent and Trademark Office ("USPTO") pursuant to Certificate of Registration No. 2,245,965 for its ACADEMY AWARD mark and Certificate of Registration Nos. 1,103,859, 1,880,473 and 1,956,313 for its ACADEMY AWARDS mark. These marks are valid, subsisting, and incontestable, and, as the owner of these registered marks, the Academy has the rights to their exclusive use.

10.    The Academy owns the OSCAR®, OSCARS® and OSCAR NIGHT® marks, which it has registered with the United States Patent and Trademark Office pursuant to Certificates of Registration Nos. 1,096,990, 1,118,751, 1,996,585 and 2,021,582, for its OSCAR mark, Certificate of Registration No. 1,528,890 for its OSCARS mark, and Certificate of Registration No. 2,029,445 for its OSCAR NIGHT mark. These marks are valid, subsisting, and incontestable, and, as the owner of these registered marks, the Academy has the rights to their exclusive use.

11.    With respect to Registration Nos. 1,103,859 and 1,880,473 for the ACADEMY AWARDS® mark, Registration No. 1,096,990 for the OSCAR® mark, and Registration No. 1,528,890 for the OSCARS® mark, the Academy has complied with the requirements set forth in Sections 8 and 15 of the Trademark Act of 1946. The Academy's exclusive right to use those marks and its registrations thereof have become incontestable within the meaning of 15 U.S.C. § 1065 and said certificates of registration constitute conclusive evidence of, inter alia, the Academy's ownership of, and exclusive right to use, those marks.

12.    The Academy is a venerable and important organization within the motion picture industry, responsible for encouraging the industry's cultural, educational and technological advances. The Academy's esteem is based on its reputation for conferring its Academy Award of Merit on only those

-4-

individuals who have shown outstanding achievement in their creative fields. Said award would not be a credible, highly prized award if the public and trade believed that the Academy sold or gave the award to persons other than its Academy Award of Merit winners. Indeed, the Academy does not license the Academy's Distinctive and Valuable Marks except to promote its annual Academy Awards® telecast or in connection with films that have been honored by the Academy. Specifically, the Academy does not otherwise allow the Academy's Distinctive and Valuable Marks to be used to advertise or promote any other product or service.

13. As a result of the Academy's long leadership of the film industry, extensive advertising, and media attention, the Academy's ACADEMY AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR NIGHT® marks have achieved widespread and favorable public acceptance and recognition, and have become assets of substantial value throughout this district, the United States, and the world.

14. The Academy's marks are recognized nationally and internationally as signifying the Academy's Award of Merit and annual Academy Awards® ceremony. The marks ACADEMY AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR NIGHT® have achieved a strong secondary meaning. The public universally associates the terms and marks "Academy Award", "Academy Awards", "Oscars" and "Oscar Night" with the Oscar® presentation by the Academy. The public also universally associates the terms and marks "Academy Award", "Oscar", and "Oscars" with the Oscar® statuette presented to the winners of the Academy's annual Awards of Merit. ACADEMY AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR NIGHT® are unquestionably linked in the public mind with the Academy and its Award of Merit. Indeed, referring to the Oscar® statuette, the Ninth Circuit has stated that "[t]he [OSCAR] mark

-5-

1    should be given the strongest possible protection against infringement."

2    Academy of Motion Picture Arts and Sciences v. Creative House Promotions,

3    944 F.2d 1446, 1455 (9th Cir. 1991).

4    **B.    DEFENDANTS**

5        15.   Defendant GoDaddy.com, Inc. is the "flagship company" of

6    GoDaddy Group, Inc., an Arizona corporation with its principal place of

7    business located at 14455 N. Hayden Rd., Suite 219, Scottsdale, AZ 85260.

8    GoDaddy purports to be the world's leading ICANN-accredited domain name

9    registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions. It

10   claims to have over forty (40) million domain names under its management,

11   and boasts that "(a)s an ICANN-accredited domain registrar, GoDaddy has

12   more names under management than any other registrar and has an array of

13   internet based services."

14       16.   Defendant GoDaddy.com, LLC is a Delaware limited liability

15   company with its principal place of business located at 14455 N. Hayden Rd.,

16   Suite 219, Scottsdale, AZ 85260.  GoDaddy.com, LLC was incorporated on

17   December 5, 2011 and is the successor in interest to GoDaddy.com, Inc.

18       17.   GoDaddy offers its services in interstate commerce, including, but

19   not limited to such services as registration, certification, hosting, parking,

20   redirection, transfer, and monetization through its "parking" program that

21   monetizes participating domain names.  GoDaddy has a number of other

22   subsidiary companies, including: Wild West Domains, Inc., Starfield

23   Technologies, and Blue Razor Domains.

24       18.   This Court has personal jurisdiction over GoDaddy because it

25   conducts substantial business within this district, has engaged in acts or

26   omissions within this district causing injury, has engaged in acts outside this

27   district causing injury within this district, and has engaged in conduct related

28   to the unlawful activities at issue in this action causing injury and harm in this

district, and/or has otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

19.    GoDaddy has intentionally used domains that it knew or should have known infringed on the Academy's Distinctive & Valuable Marks.

20.    GoDaddy has registered domains, monetized domains, intentionally displayed advertisements on parked domains, and otherwise utilized the Academy's Distinctive & Valuable Marks without Plaintiff's consent or authorization.

21.    GoDaddy has profited from its unlawful and unauthorized conduct alleged herein.

22.    As described above, and in more detail below, Defendants' unlawful conduct has also caused Plaintiff to expend time and money in policing Defendants' activities, issuing cease-and-desist letters, and monitoring Defendants' activities for compliance.  Moreover, Plaintiff has suffered a loss in the value of its trademarks.

## GODADDY'S BUSINESS

23.    GoDaddy advertises and procures customers by offering "free parking" of a registrant's domain name.

24.    Under GoDaddy's "Parked Page Service", GoDaddy will park the registrant's page and place advertisements on the web page while GoDaddy is granted the right to collect and retain all revenue generated by the advertising. GoDaddy's registrant-customers do not share the revenue GoDaddy generates from parking their domain names.

25.    Conservatively, GoDaddy has more than 500,000 customers in the State of California and earns revenue in excess of $35 million per year from those customers.

26.    GoDaddy also utilizes a Cash Parking Program, to monetize

-7-

FIRST AMENDED COMPLAINT

1  parked domain names that are confusingly similar to distinctive, famous and

2  valuable marks.  The Cash Parking Program is a service GoDaddy offers to its

3  customers that permits domain registrants to pay a fee to allow GoDaddy,

4  through its advertising partner, to place ads on the registrant's web page.  The

5  revenue generated through this advertising is then split between the registrant,

6  GoDaddy, and GoDaddy's advertising partner.

7        27.   GoDaddy has submitted a United States Patent Application for

8  "Systems and Methods for Filtering Online Advertising Trademarks".  The

9  patent application recognizes the need for systems and methods to filter online

10  advertisements containing third-party trademarks because an unscrupulous

11  domain name registrant could attempt to gain financially by signing up for

12  domain parking advertising using a trademarked domain name notwithstanding

13  that the rightful trademark owners would not want their trademarks used by

14  others to profit from their trademarks.  *Id.*, at [0007] and [0033].  The patent

15  application reflects both GoDaddy's recognition of the need—and its ability—

16  to protect against the very illegitimate activity and injury that it promotes and

17  profits from.

18        28.   GoDaddy knew it was harming trademark holders, such as the

19  Academy, by monetizing domains utilizing their marks.  In fact, GoDaddy

20  provided an example of such harmful activity in its Patent Application.  Its

21  example is virtually identical to the activities the Academy complains of here

22  and details precisely why advertisements should not be placed on Deceptive

23  Domains:

24

25            [0033] In such situations, an unscrupulous domain name
              registrant may attempt to financially gain from using the
26            trademarked domain name.  For example, he may sign up for
              one of the domain parking advertising methods discussed
27            above.  If the trademark owner is one of the advertisers
              partaking in the advertising program (many major products

28

-8-

FIRST AMENDED COMPLAINT

and services providers are), the trademark owner's advertisements and links may appear when an Internet user accesses the domain name registrant's parked webpage. Using the hypothetical example in the previous paragraph, if an Internet user accesses a parked webpage resolving from a domain name that includes a trademark (but is not owned or controlled by the trademark owner--such as www.mygodaddy.com), the trademark owner and legitimate business entity's (GODADDY.COM) advertisements and links may appear. Legitimate trademark owners may not want their trademarks, advertisements, links, and websites used in such a manner because it allows others to profit from their trademarks. Such practices also may add credence or an air of legitimacy to any products or services offered on the domain name registrant's webpage.

[0034] For these reasons, systems and methods for filtering online advertisements containing third-party trademarks are needed.

Despite the foregoing, GoDaddy is committing the unscrupulous behavior described above to profit from The Academy's Distinctive & Valuable Marks.

29.     Pursuant to the agreements GoDaddy requires its registrant-customers to agree to, GoDaddy is the authorized licensee of the registrants for the purpose of placing advertisements for commercial gain on the registrants' webpages in both the Parked Page Service and the Cash Parking Program.

30.     GoDaddy, as the authorized licensee of the registrants, has licensed, monetized, used and/or trafficked in at least the following domain names in its Parked Page Service, with bad faith intent to profit from the Distinctive & Valuable Marks of the Academy:

- 2011THEOSCARS.COM
- 24HOURSATOSCARS.COM
- 24HOURSATTHEOSCARS.COM
- 2OSCARS.COM

FIRST AMENDED COMPLAINT

- ALLOSCARWINNERS.COM
- BILLYCRYSTAL2012ACADEMYAWARDS.COM
- BILLYCRYSTAL2012OSCARS.COM
- NIGHTATOSCARS.COM
- OSCARGOODIEBAGS.COM
- OSCARIMAGES.COM
- OSCARMOMINEE.COM
- OSCARMOMINEES.COM
- OSCARMONLINE.COM
- OSCARREDCARPET.COM
- OSCARWINNERS2009.COM
- OSCARWINNERS2012.COM
- THEOSCARS2011.COM
- TWOOSCARS.COM
- 100OSCAR.COM
- 100THOSCAR.COM
- 100OSCARS.COM
- ACADEMYAWARD100.COM
- BESTPICTUREOSCARNOMINATIONS.COM
- BESTOSCARPARTYINTOWN.COM
- COMEDYOSCARS.COM
- IAMANOSCARWINNER.COM
- LETSTALKOSCARS.COM
- OSCAR2014LIVE.COM
- OSCAR2013LIVE.COM
- OSCAR2013LIVESTREAM.COM
- OSCARARTPRODUCTION.COM
- OSCARAWARD2013LIVE.COM
- OSCARAWARDS2013.COM
- OSCARHOSTS.COM
- OSCARLIVE2013.COM
- OSCARNOMINATEDMOVIES.COM

FIRST AMENDED COMPLAINT

| | |
|---|---|
| 1 | • OSCARPICTURES.COM |
| 2 | • OSCARS2013LIVE.COM |
| 3 | • OSCARSFILM.COM |
| | • OSCARSNOBINATIONS.COM |
| 4 | • OSCARSWINNER.COM |
| 5 | • OSCARWEEK.COM |
| 6 | • OSCARWINNERS2009.COM |
| 7 | • OSCARWINNINGACTORS.COM |
| 8 | • OSCARWINNERS2012.COM |
| 9 | • WATCHOSCAR2013ONLINE.COM |
| 10 | • YOUTUBEOSCARS.COM |
| 11 | • ZBIGATTIACADEMYAWARDS.COM |
| 12 | • ACADEMYAWARDSWINNERSLIST.COM |
| 13 | • WATCHOSCARAWARDS2012ONLINE.COM |
| 14 | • WATCHACADEMYAWARDS2012ONLINE.COM |
| 15 | • OSCARNOMINATIONS2013.COM |
| 16 | • ONLINEOSCARS.COM |
| 17 | • OSCARACTOR.COM |
| 18 | • OSCARACTRESS.COM |
| 19 | • NOMINATEDBYOSCAR.COM |
| 20 | • NOMINATEDBYOSCAR.NET |
| 21 | • NOMINATEDBYOSCAR.ORG |
| 22 | • OSCARMOVIES.COM |
| 23 | • OSCARFILMSITESI.COM |
| 24 | • ONACADEMYAWARDS.COM |
| 25 | • ACADEMYAWARDEE.COM |
| 26 | • ACADEMYAWARDER.COM |
| 27 | • INDIEACADEMYAWARDS.COM |
| 28 | • MUSICACADEMYAWARD.COM |
| | • ACADEMYAWARDS2015.COM |
| | • OSCAR-MOVIE.COM |
| | • OSCAR-MOVIE.INFO |

-11-

- OSCAR-THEMOVIE.INFO
- OSCAR-O.COM
- OSCAR-O.INFO
- OSCAR-W.COM
- TOGETHERACADEMYAWARDS.COM
- ACADEMYAWARDSNOMINATION.COM
- AFRICANACADEMYAWARDS.COM
- OSCAR-PG.COM
- SAPPHIREACADEMYAWARDS.COM
- MILLIONAIREACADEMYAWARDS.COM
- MILLIONAIRESACADEMYAWARDS.COM
- ACADEMY-AWARDS.ORG
- ACADEMYAWARDSMOVIES.COM
- OSCAR-MOVIES.INFO
- WILDABOUTTHEACADEMYAWARDS.COM
- 2012ACADEMYAWARDS.COM
- 2013ACADEMYAWARDS.COM
- ACADEMYAWARDS2011WINNERS.COM
- ACADEMYAWARDS2012WINNERS.COM
- ALLOSCAR.COM
- LISTOFACADEMYAWARDWINNERS.COM
- OSCARBUZ.COM
- OSCARCAP.COM
- OSCARWINNINGMOVIES.COM
- ACADEMY-AWARDS-POOL.COM
- OSCAR-AWARDS-POOL.COM

Because there are so many infringing domain names, attached as Exhibits A-J are true and correct copies or screenshot exemplars from the list in paragraph 30.

31. GoDaddy, as the authorized licensee of the registrants in the Cash Parking Program, has licensed, monetized, used and/or trafficked at least the

-12-

following domain names, with bad intent to profit from the famous, Distinctive & Valuable Marks of the Academy:

- 2012ACADEMYAWARDS.COM
- 2013ACADEMYAWARDS.COM
- ACADEMYAWARDS2011WINNERS.COM
- ~~ACADEMYAWARDS2012WINNERS.COM~~
- ALLOSCAR.COM
- LISTOFACADEMYAWARDWINNERS.COM
- MYOSCARORNOT.COM
- MYOSCARSORNOT.COM
- OSCARBUZ.COM
- OSCARCAP.COM
- OSCARWINNINGMOVIES.COM
- ACADEMY-AWARDS-POOL.COM
- OSCAR-AWARDS-POOL.COM

Attached as Exhibits K-N are a few screenshots of examples from the list in paragraph 31.

32.     As a direct and proximate result of Defendants' conduct alleged in this Complaint, the Academy has suffered injury to its business and property, suffered financial loss, been deprived of property, and has otherwise been damaged by Defendants' misconduct.  Plaintiff's losses include the time and expense of locating infringing pages parked with the Defendants, and the fees for legal actions taken with respect to those pages.  Plaintiff has also suffered lost value in its trademarks.

33.     Through its Cash Parking program,  GoDaddy and the Registrants of the domains have conspired to make money through their concerted action in registering, monetizing and sharing revenue from parked domains that infringe the Academy's Distinctive & Valuable Marks.

-13-

FIRST AMENDED COMPLAINT

34.     GoDaddy has engaged in acts in furtherance of their conspiracy, including but not limited to:

   a.     Registering the domains listed in paragraph 29 and 30:

   b.     Parking said domains and utilizing the parked domain to display revenue generating advertisements (monetized parked domain); and

   c.     Sharing revenue generated from parked domains.

35.     GoDaddy has continued to permit the domain names listed in paragraphs 30 and 31 to be registered and parked, even though the Academy previously filed a virtually identical lawsuit against GoDaddy for this same conduct and has sent numerous cease-and-desist letters to GoDaddy, demanding that it stop "registering or using the Academy's trademarks, or any colorable imitations thereof, as domain names".   The Academy sent the numerous cease-and-desist letters to GoDaddy, and its registrants between August 1, 2007, and February 5, 2010 and filed a lawsuit on May 14, 2010. Despite the foregoing, many of the domain names that were the subject of these cease-and-desist letters are strikingly similar or identical to the domain names that  GoDaddy  permitted to be registered and parked several years later.  For example:

- On July 6, 2009, the Academy sent GoDaddy.com, Inc. a cease-and-desist letter for ACADEMYAWARDSDVD.COM. Despite that letter,  GoDaddy later permitted OSCARDVD.COM to be registered and parked; and

- On February 21, 2008, October 10, 2008, July 6, 2009, July 22, 2009, and August 6, 2009, the Academy sent and GoDaddy.com, Inc. cease-and-desist letters for domain names that incorporated variations of Academy Awards with the term "winners."  Despite those         letters,        GoDaddy        later        permitted

-14-

FIRST AMENDED COMPLAINT

ACADEMYAWARDS2011WINNERS to be registered and parked.

36.     Plaintiff has expended significant time and expense, including in connection with the retention of counsel and third party domain monitoring services, in identifying these infringing pages and sending the cease-and-desist letters.  In addition, Defendants' illegal activities result in advertising related to the Academy's marks being placed on numerous parked pages that have no actual relationship to the Academy, thereby causing dilution of Plaintiff's interest in legally protected trademarks.

## FIRST CLAIM FOR RELIEF

### (Violation of the Anticybersquatting Consumer Protection Act)

37.     Plaintiff hereby repeats and re-alleges all of the preceding paragraphs as though fully set forth herein.

38.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth above.

39.     In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA" or "Act"), 15 U.S.C.A. § 1125(d), to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners.

40.     15 U.S.C. 1125(d) provides:

> (d) **Cyberpiracy prevention**
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
> (i)   has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

FIRST AMENDED COMPLAINT

(ii)    registers, traffics in, or uses a domain name that—

    (I)    in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

    (II)    in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

    (III)    is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

15 U.S.C. 1125 (d)(E) provides:

As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

41.    The ACPA applies not only to individuals and companies who register domain names, but also to: (1) registrants of the Deceptive Domains; (2) anyone who "uses" the domain name which is defined as the registrant or the "authorized licensee" of the registrants of the Deceptive Domains; and (3) anyone who "traffics in" Deceptive Domains, which refers to anyone involved in any transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration, whether or not the person is the registrant of the Deceptive Domain.

42.    The ACPA makes unlawful the use, licensing, pledging, trafficking in, or any other exchange of consideration for the use of the Deceptive Domain Names. Defendants' conduct in monetizing the infringing

-16-

1    Deceptive Domains violates the Act.

2    43.    As alleged herein, GoDaddy has acted as the authorized licensee

3    of the registrants and used the infringing Deceptive Domains in violation of the

4    ACPA, with bad faith intent to profit from the Academy's Distinctive &

5    Valuable Marks.

6    44.    GoDaddy's acts as alleged herein constitute the use of and

7    trafficking in infringing Deceptive Domains, in violation of the ACPA with

8    bad faith intent to profit from the Academy's Distinctive & Valuable Marks.

9    45.    GoDaddy's acts as alleged herein constitute cyberpiracy,

10   cybersquatting, and/or typosquatting (a form of cybersquatting based on

11   typographical errors users may make in entering domain names into a web

12   browser), in violation of the ACPA.

13   46.    The Academy's Distinctive & Valuable Marks were distinctive,

14   famous, venerable, valuable, and federally-registered before GoDaddy

15   registered, trafficked in or acted as the authorized licensee of various

16   registrants and used the Deceptive Domains.

17   47.    The infringing Deceptive Domains, including without limitation

18   those identified in paragraphs 32 and 33 are identical or confusingly similar to

19   the Academy's Distinctive & Valuable Marks.

20   48.    GoDaddy does not have any intellectual property rights or any

21   other rights in the Academy's Distinctive & Valuable Marks.

22   49.    None of the infringing Deceptive Domains consist of the legal

23   name of GoDaddy, or a name that is otherwise commonly used to identify

24   GoDaddy.

25   50.    GoDaddy has never made any prior use of any of the infringing

26   Deceptive Domains in connection with the bona fide offering of any goods or

27   services.

28   51.    GoDaddy trafficked in and used the infringing Deceptive Domains

-17-

1  to divert consumers from Plaintiff's websites to websites accessible from the
2  infringing Deceptive Domains. GoDaddy thereby created a likelihood of
3  confusion as to the source, sponsorship, affiliation, or endorsement of the
4  infringing Deceptive Domain websites.

5  52. GoDaddy has used, trafficked in, and acted as registrant's
6  authorized licensee in the infringing Deceptive Domains which it knew were
7  identical or confusingly similar to the protected and Distinctive & Valuable
8  Marks of Plaintiff, which were distinctive at the time of the registration and
9  continue to be distinctive.

10  53. GoDaddy's trafficking in, and/or use, as the authorized licensee of
11  the registrant, of the infringing Deceptive Domains constitutes cybersquatting
12  in violation of 15 U.S.C. § 1125(d).

13  54. By reason of GoDaddy's acts alleged herein, a remedy at law is
14  not adequate to compensate plaintiff for the injuries inflicted by Defendants.
15  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief
16  pursuant to 15 U.S.C. § 1116.

17  55. By reason of Defendants' acts alleged herein, Plaintiff is entitled
18  to recover GoDaddy's profits, actual damages and the costs of the action, or,
19  on Plaintiff's election, statutory damages under 15 U.S.C. § 1117, in an
20  amount up to $100,000 per domain name infringement.

21
22  **SECOND CLAIM FOR RELIEF**
23  **(Violation of California Business & Professions Code**
24  **Section 17200 et seq. -Unfair Conduct)**

25  56. Plaintiff realleges the preceding paragraphs as if fully set forth
26  herein and, to the extent necessary, pleads this cause of action in the
27  alternative.

28  57. Plaintiff has standing to pursue this claim as Plaintiff has suffered

-18-

1   injury in fact and has lost money or property as a result of Defendants' actions

2   as set forth above.  Those losses include the expense of locating infringing web

3   pages and legal fees for issuing cease-and-desist letters.  Those losses also

4   include dilution of Plaintiff's trademarks.

5       58.   GoDaddy's actions as alleged in this complaint constitute "unfair"

6   conduct within the meaning of California Business and Professions Code

7   sections 17200 et seq.

8       59.   GoDaddy's business practices, as alleged herein, are "unfair"

9   because they offend established public policy and/or are immoral, unethical,

10  oppressive, unscrupulous and/or substantially injurious to business owners and

11  commerce within the State of California.  GoDaddy's conduct is "unfair"

12  because GoDaddy uses valuable property that does not belong to it, without the

13  owners' permission or consent, for its own commercial/economic gain.

14      60.   As a result of GoDaddy's "unfair" conduct, Plaintiff has been

15  deprived of its property, had its property and goodwill diluted and diminished,

16  suffered economic/financial loss, and was otherwise injured and damaged. As

17  indicated above, those losses include costs associated with identifying

18  infringing sites promulgated as a result of GoDaddy's illegal conduct, as well

19  as dilution and diminution in value of Plaintiff's valuable and legally protected

20  trademarks.

21      61.   The general public has been damaged by GoDaddy's unfair

22  conduct by being confused and misdirected on the internet.

23      62.   GoDaddy's wrongful business practices alleged herein constituted,

24  and continue to constitute, a continuing course of unfair competition since

25  GoDaddy continues to generate revenue in a manner that offends public policy

26  and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or

27  substantially injurious to its California businesses, commerce, competition and

28  general public.

-19-

FIRST AMENDED COMPLAINT

63.   Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff seeks an Order enjoining GoDaddy from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

64.   Plaintiff also seeks an order requiring GoDaddy to make full restitution of all monies it has wrongfully obtained from Plaintiff, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 et seq.

### THIRD CLAIM FOR RELIEF
### (Violation of California Business & Professions
### Code § 17200 et seq.-Unlawful Conduct)

65.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

66.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth in detail above.

67.   GoDaddy's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of California Business and Professions Code §17200 et seq. because GoDaddy's actions are "unfair" and violate both federal statutory law and California statutory and common law.

68.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an Order enjoining GoDaddy from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

69.   Plaintiff seeks an order requiring GoDaddy to make full restitution of all moneys it has wrongfully obtained from Plaintiff, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 et seq.

FIRST AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, the Academy prays for relief as follows:

a.     The Court enter a judgment that Defendants have violated the rights of the Academy in the Academy's Distinctive & Valuable Marks.

b.     The Court adjudge and decree that GoDaddy, its agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with GoDaddy, be preliminarily and permanently enjoined from the following activities:

      1.     Registering, using, or trafficking in any manner, in any domain name that incorporates, in whole or in part, the Academy's Distinctive & Valuable Marks or any name, mark or designation confusingly similar thereto ("Deceptive Domains");

      2.     Using the Academy's Distinctive & Valuable Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether GoDaddy is affiliated or associated with or sponsored by Plaintiff;

      3.     Registering any domain name using an automated process that is intended to create (or which could result in the creation of) Deceptive Domains;

      4.     Engaging in typosquatting;

      5.     Engaging in cybersquatting;

      6.     Engaging in cyberpiracy;

      7.     Assisting, conspiring with, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

c.     The Court award statutory damages under 15 U.S.C. § 1117(d), on

FIRST AMENDED COMPLAINT

1    election of Plaintiff, in an amount of One Hundred Thousand Dollars

2    ($100,000.00) per domain name infringement;

3    　　　　d.　　The Court adjudge and decree that GoDaddy be ordered to pay the

4    Academy's reasonable attorney fees, prejudgment interest, and costs of this

5    action;

6    　　　　e.　　That, with respect to state statutory law claim,

7    　　　　　　　1.　　That GoDaddy be permanently enjoined and

8    restrained from, in any manner, directly or indirectly, continuing,

9    maintaining, or engaging in the unfair, unlawful, and/or deceptive

10   practices alleged herein;

11   　　　　　　　2.　　That Plaintiff be awarded full restitution of money

12   Defendants have unlawfully obtained, as well as compensatory damages

13   and/or all other available monetary and equitable remedies;

14   　　　　　　　3.　　That Plaintiff be awarded both pre-and post-judgment

15   interest at the maximum allowable rate on any amounts awarded;

16   　　　　　　　4.　　That Plaintiff recover its costs of suit, including

17   reasonable attorneys' fees as provided by law; and

18   　　　　f.　　That Plaintiff be awarded such other and further relief as may be

19   necessary and appropriate.

20

21   Dated: December 17, 2013

22   BOIES, SCHILLER & FLEXNER LLP

23   FOOTE MIELKE CHAVEZ & O'NEIL

24   LLC

25   LEE TRAN LIANG & WANG LLP

26   *Counsel for Plaintiff* ACADEMY OF
     MOTION PICTURE ARTS AND
27   SCIENCES

28

-22-

FIRST AMENDED COMPLAINT