**WRENN BENDER LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:       amckown@wrennbender.com
                    pzecchini@wrennbender.com
                    gtrimarche@wrennbender.com

Attorneys for Defendant
GODADDY.COM, LLC

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; GODADDY.COM, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. CV13-08458-ABC (CW)<br><br>Assigned to Hon. Audrey B. Collins Courtroom 680<br><br>**NOTICE OF MOTION AND MOTION TO RECUSE THE HON. AUDREY B. COLLINS; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING AFFIDAVIT OF NIMA KELLY; CERTIFICATE OF GOOD FAITH**<br><br>[28 U.S.C. Sections 144 and 455]<br><br>Complaint Filed:   November 15, 2013<br>Trial Date:           Not Set<br><br><br>Date: February 3, 2014<br>Time: 9:00 a.m.<br>Dept.: To Be Determined |

1

TO THE COURT, PLAINTIFF, AND PLAINTIFF'S COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2014 at 9:00 a.m. or as soon thereafter as the matter may be heard by the above-entitled Court, in a Courtroom to be determined, located at the Edward Roybal Federal Office Building, 255 East Temple Street, Los Angeles, California, 90012, Defendant GoDaddy.com, Inc. ("GoDaddy") will, and hereby does, move pursuant to 28 U.S.C. sections 144 and 455 to recuse the Hon. Audrey B. Collins from this action.

The motion is based on (1) the extrajudicial statements by Judge Collins during the June 24, 2013 Status Conference in an earlier filed lawsuit between the parties captioned *AMPAS v. GoDaddy.com, Inc., et. al*, CV10-3738-ABC (CW) ("*AMPAS I*"); (2) the repeated statements by AMPAS' counsel that Judge Collins "is the Academy's judge,"; (3) the 24 consecutive reassignments of unrelated trademark cases filed by AMPAS over a fifteen (15) year period to Judge Collins inconsistent with the Court's General Orders; (4) the clear abuse of Judge Collins' discretion in denying GoDaddy's Rule 37 Motion to Exclude Joe Presbrey in *AMPAS I*; (5) AMPAS' repeated attempts to leverage its favorable relationship with Judge Collins for settlement purposes, and (6) the fact that Judge Collins' daughter is an actress who appears on AMPAS' website.  These facts, in total, demonstrate an overwhelming appearance of personal bias toward AMPAS such that a reasonable person with knowledge of all the facts would conclude that Judge Collins' impartiality might reasonably be questioned.

The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Nima Kelly, the Request for Judicial Notice, the Certificate of Good Faith by Counsel of Record, the records and file herein, and on such other evidence and argument as may be presented at the hearing of the motion.

GoDaddy's counsel met and conferred with opposing counsel on December

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

2

15, 2013, which was at least seven days prior to filing this motion in accordance with Local Rule 7.3.

Dated:  January 6, 2014                    **WRENN BENDER LLLP**
                                           Aaron M. McKown
                                           Paula L. Zecchini


                                           By:  */s/ Aaron M. McKown*
                                                Aaron M. McKown
                                           Attorneys for Defendant
                                           GODADDY.COM, LLC

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

3

TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................1

II.  FACTUAL BACKGROUND ...............................................................4

   A.   AMPAS' FIFTEEN YEAR PATTERN OF HAVING ITS TRADEMARK CASES
IMPROPERLY REASSIGNED TO JUDGE COLLINS .........................................4

   B.   JUDGE COLLINS' JUNE 21, 2013 RULINGS IN THIS ACTION DEMONSTRATE A
CLEAR BIAS IN FAVOR OF AMPAS ........................................................7

   C.   EXTRAJUDICIAL STATEMENTS BY JUDGE COLLINS WARRANT RECUSAL .........8

   D.   AMPAS REPEATEDLY FLAUNTS JUDGE COLLINS' BIAS IN ATTEMPT TO
COERCE SETTLEMENT ..........................................................................9

   E.   JUDGE COLLINS' BIAS MAY STEM FROM HER DAUGHTER'S PROFESSION AS AN
ACTRESS AND HER APPEARANCE ON AMPAS' WEBSITE ......................11

III.  LEGAL STANDARD....................................................................11

IV.  THE RECORD DEMONSTRATES AN ACTUAL OR APPARENT BIAS
BY JUDGE COLLINS IN FAVOR OF AMPAS.................................14

   A.   MORE THAN TWO DOZEN CASES WERE IMPROPERLY REASSIGNED TO JUDGE
COLLINS OVER THE LAST FIFTEEN YEARS................................................14

   B.   JUDGE COLLINS' JUNE 21, 2013 RULINGS IN *AMPAS I* BOLSTER AN
APPEARANCE OF BIAS IN FAVOR OF AMPAS ........................................16

   C.   JUDGE COLLINS' EXTRAJUDICIAL STATEMENTS AT THE JUNE 24, 2103 STATUS
CONFERENCE WARRANT RECUSAL ......................................................21

      1.   *Statements Demonstrate Judge Collin's Pre-Determined*..........................21
*Outcome of AMPAS I and This Case* ................................................21

      2.   *Judge Collins Encouraging AMPAS To File and Relate A This Lawsuit For*
*Belatedly Identified Domain Names Independently Warrants Recusal*.............23

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.   REPEATED STATEMENTS BY AMPAS AND QUINN EMANUEL THAT COLLINS' IS "THE ACADEMY'S JUDGE" ........................................................25

**V.   GODADDY'S MOTION IS TIMELY ...........................................26**

**VI.  CONCLUSION ...............................................................28**

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

# TABLE OF AUTHORITIES

### CASES

*Accentra Inc. v. Staples, Inc.*,

   CV 07-5862 ABC RZX, 2010 WL 8450890 (C.D. Cal. Sept. 22, 2010) --------- 20

*American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*,

   190 F.3d 729 (6th Cir. 1999) -------------------------------------------------- 26

*Bank of America, N.A. v. Murphy, Weir & Butler*,

   210 F.3d 983 (9th Cir. 2000) -------------------------------------------------- 26

*Berger v. United States*,

   255 U.S. 22 (1921)-------------------------------------------------------------- 11

*Church of Scientology of California v. Cooper*,

   495 F.Supp. 455 (C.D. Cal. 1980) -------------------------------------------- 11

*Davis v. Xerox*,

   811 F.2d 1293 (9th Cir. 1987)------------------------------------------------- 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*,

   967 F.2d 1280 (9th Cir. 1992)------------------------------------------------- 27

*FSLIC v. Dixon*,

   835 F.2d 554 (5th Cir. 1987) ------------------------------------------------- 22

*Herrington v. Sonoma County*,

   834 F.2d 1488 (9th Cir. 1987)------------------------------------------------- 14

*In re Murchison*,

   349 U.S. 133 ------------------------------------------------------------------- 12

*In re School Asbestos Litigation*,

   977 F.2d 764 (3d Cir.1992)--------------------------------------------- 12, 13

*In re: Reassignment of Cases*,

   736 F.3d 118 (2d. Cir. 2013) ------------------------------------------------- 24

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

iii

*Liljeberg v. Health Servs. Acq. Corp.*,

    486 U.S. 847 (1988) ------------------------------------------------------------- 13

*Liteky v. United States*,

    510 U.S. 540 (1993) --------------------------------------------------------- 17, 28

*Milgard Tempering, Inc. v. Selas Corp. of America*,

    902 F.2d 703 (9th Cir. 1990) ------------------------------------------------- 12

*Pesnell v. Arsenault*,

    543 F.3d 1038 (9th Cir. 2008)-------------------------------------- 12, 21, 26

*Potashnick v. Port City Const. Co.*,

    609 F.2d 1101 (5th Cir. 1980)------------------------------------------------- 13

*Preston v. United States*,

    923 F.2d 731 (9th Cir. 1991) ----------------------------------------------- 27, 28

*Shek v. Children's Hospital & Research Ctr. of Oakland*,

    No. C-13-2017 WHA, 2013 WL 4014991 at *2 (N.D. Cal. Aug. 5, 2013) ------- 12

*Smith v. Danyo*,

    585 F.2d 83 (3rd Cir. 1978)------------------------------------------------------- 27

*U.S. v. Studley*,

    783 F.2d 934 (9th Cir. 1986) ------------------------------------------ 12, 21, 26

*United States v. Conforte*,

    624 F.2d 869 (9th Cir. 1980) ----------------------------------------------- 13, 14

*United States v. Furst*,

    886 F.2d 558 (3rd Cir. 1989) ----------------------------------------------------- 27

*United States v. Hernandez*,

    109 F.3d 1450 (9th Cir. 1997)------------------------------------------ 12, 21, 26

*United States v. Holland*,

    519 F.3d 909 (9th Cir. 2008) ----------------------------------------------- 12, 13

*United States v. Jacobs*,

    855 F.2d 652 (9th Cir. 1988) ---------------------------------------------------- 23

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

iv

*United States v. Sibla,*

   624 F.2d 864 (9th Cir. 1980) ------------------------------------------------- 11, 12

*Vinotemp Int'l Corp. v. Wine Master Cellars, LLLP,*

   CV 11-1543 ABC PLAX, 2013 WL 5366405 (C.D. Cal. Feb. 5, 2013)----------- 20

<u>S</u>TATUTES

15 U.S.C. § 1125(d) ------------------------------------------------------------- 1, 4

28 U.S.C. § 144 ------------------------------------------------------------passim

28 U.S.C. § 455 ------------------------------------------------------------------ 12

28 U.S.C. § 455(a) ---------------------------------------------------------passim

Cal. Bus & Prof. Code § 17200 --------------------------------------------------- 1

<u>R</u>ULES

Fed. R. Civ. P. 26 ----------------------------------------------------- 2, 18, 19

Fed. R. Civ. P. 26(a)------------------------------------------------------------- 18

Fed. R. Civ. P. 26(a)(1)(4)------------------------------------------------------- 20

Fed. R. Civ. P. 26(a)(1)(A)(i) --------------------------------------------------- 17

Fed. R. Civ. P. 37 --------------------------------------------------- 18, 19, 20

USDC Central Local Rule 16-2.4------------------------------------------------- 20

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is the second of two lawsuits filed by AMPAS against GoDaddy alleging violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d), and California Business & Professions Code section 17200 et seq.   The gravamen of AMPAS' complaint is that GoDaddy's Parked Page Programs monetized or attempted to monetize, and therefore "used" and "trafficked in," certain domain names registered by GoDaddy's customers that are identical, confusingly similar, and/or dilutive of AMPAS' trademarks and that GoDaddy did so with a specific "bad faith" intent to profit from those marks.

The first case was originally assigned to the Hon. Dale S. Fischer ("*AMPAS I*").   On May 18, 2010, AMPAS filed a Notice of Related Case claiming that *AMPAS I* was related to sixteen cases previously filed by AMPAS from 1999 to present, all of which AMPAS claimed related back to the first case AMPAS had with her in 1999 despite no commonality in parties, facts, or claims.   Nonetheless, *AMPAS I* was deemed related and accepted by Judge Collins for reassignment even though the required criteria set forth in the Court's General Order 08-05 were not met.   The only commonality between *AMPAS I* and the sixteen "related" cases is that they involve AMPAS and its trademarks.

The reassignment of *AMPAS I* to Judge Collins continued a long and consistent pattern of ensuring that all trademark lawsuits filed by AMPAS since 1999 were reassigned to her – twenty-five (25) such cases in the past fifteen (15) years.   This is not the result of mere coincidence.   AMPAS' counsel has been using the "Notice of Related Case" process to game the system in order to allow AMPAS to have its cases reassigned to Judge Collins time and again.

AMPAS has found a favorable judge in Judge Collins, and its counsel have figured out that by filing a Notice of Related Case contemporaneous with any initiating pleading regardless of its merits, they can get their cases reassigned to

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1

Judge Collins virtually every time.  Judge Collins, for her part, has been complicit in this misconduct, accepting 26 of the 28 attempts by AMPAS to reassign a case to her (the only two attempts she declined were the result of an obvious conflict of interest, e.g., a personal financial interest held by her or a close family member in a named defendant).  The result is a fifteen (15) year judicial relationship involving over two dozen cases, with repeated and reliable positive outcomes for AMPAS, and an ever-increasing familiar relationship between AMPAS, its counsel, and Judge Collins.

Of course, merely having the same judge in two dozen cases over a fifteen (15) year period would not, in and of itself, comprise sufficient evidence of bias, nor would it create a sufficient question of partiality to support recusal under 28 U.S.C. sections 144 and 455(a).  This relationship between AMPAS and Judge Collins, however, has become so friendly and familiar that AMPAS now routinely refers to Judge Collins as "the Academy's Judge" – including for the express purpose of gaining negotiating leverage in mediation and settlement proceedings.

Even more problematic is the fact that this relationship appears to have affected Judge Collins' ability to remain impartial where AMPAS is concerned.  Judge Collins' bias manifested itself most clearly in the *AMPAS I* in two connected instances:  (1) the denial of GoDaddy's Rule 37 motion to exclude Joe Presbrey on June 21, 2013 despite her acknowledgement that AMPAS violated its obligations to disclose him under Rule 26; and (2) her extrajudicial statements at the Status Conference on June 24, 2013, wherein she not only telegraphed the likely outcome of both *AMPAS I* and this case, but used her certainty of the predetermined outcome as a prelude to mandating that GoDaddy participate in a second court-ordered mediation.  To use Judge Collins' own words:   "[I]t might be good **now that you [found] out how things are going** to discuss settlement or to have your settlement conference . . . .  **But it's certainly time to start thinking about that because I think you can see the outlines of the way it's going**."  In fact, despite the parties'

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

2

completion of court-ordered mediation just three months before the conference, Judge Collins made clear to GoDaddy that "you will go to settlement before this case ever goes back to trial. That's for sure, you'll go back."

Indeed, this case is the result of Judge Collins' encouragement of AMPAS to file a second lawsuit for those domain names that AMPAS failed to timely disclose in *AMPAS I*, and to relate it to *AMPAS I* in order to ensure that this case would be reassigned to her. Following Judge Collins' cue, AMPAS filed this second lawsuit, filed a Notice Related Case, and successfully had this case reassigned to Judge Collins.

While GoDaddy cannot state with certainty the motive behind Judge Collins' apparent favoritism towards AMPAS, one possible explanation is that her daughter is a professional actress. In fact, information regarding her daughter can be found on AMPAS' website.

In granting this motion, the Court need not find any acts of misconduct, actual bias, or actual partiality on the part of Judge Collins. Rather, recusal is required whenever a reasonable disinterested observer would "harbor doubts" about the judge's impartiality. The record presented here demonstrates clear doubt about Judge Collins' impartiality as a judicial officer in any case involving AMPAS, including this one. Specifically, the recent extrajudicial statements by Judge Collins on June 24, 2013, when coupled with (1) the twenty-four consecutive reassignments of AMPAS trademark cases to Judge Collins in contravention of the Court's General Orders, (2) Judge Collins' June 21, 2013 rulings, and (3) the statements made by AMPAS' counsel about Judge Collins being "the Academy's judge" for the past fifteen (15) years, evince an appearance of bias in favor of AMPAS such that a person with knowledge of all facts might question her impartiality in any case involving AMPAS. Accordingly, GoDaddy respectfully requests that either Judge Collins recuse herself from proceeding further in this action or, alternatively, another judge of this Court recuse her.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

3

## II.   **FACTUAL BACKGROUND**

### A.   **AMPAS' Fifteen Year Pattern Of Having Its Trademark Cases Improperly Reassigned To Judge Collins**

AMPAS has a long history of litigation in the Central District.  AMPAS was first randomly assigned to Judge Collins in a trademark case filed on May 4, 1999, captioned *AMPAS v. Harwood*.[1]  *See* Request for Judicial Notice ("RFJN"), Exh. 6; Declaration of Nima Kelly ("Kelly Decl.") ¶¶ 28, 30, Exh. F.  The *Harwood* matter closed on November 29, 1999 after the defendants entered into a stipulated judgment on the merits and Judge Collins issued a permanent injunction in favor of AMPAS.  *See* RFJN, Exh. 5; Kelly Decl., Exh. F.  Other than the fact that the case involved domain names incorporating AMPAS' marks, there is no similarity or relation between the *Harwood* matter and either this action or *AMPAS I*.  *Id.*  Nor can there be given that *AMPAS I* and this action allege cybersquatting under the ACPA, a statute that did not become effective until the day *Harwood* closed.  *See* 15 U.S.C. § 1125(d).

AMPAS next filed a trademark suit in the Central District on August 27, 2001 in a matter captioned *AMPAS v. Butterfields Auction*.  *See* RFJN, Exh. 7; Kelly Decl. at ¶¶ 29-30, Exh. F.  AMPAS filed a Notice of Related Case in the *Butterfields Auction* matter claiming that it related to the *Harwood* case previously assigned to Judge Collins.  *See id.*  Despite General Order 224's prohibition on the relation of cases to previous matters that had been closed at least one year after a determination on the merits, the case was improperly deemed related and accepted by Judge Collins for reassignment.  *See* RFJN, Exh. 1 (General Order 224) at ¶ 5.1.1; Kelly Decl. at ¶ 30, Exh. F.

Over the course of the next 13 years, AMPAS filed similarly defective related

---

[1]   Judge Collins has been on the bench in the Central District since 1994.  From 1994 through May 1999, AMPAS did not have a case assigned to Judge Collins.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

case notifications in the twenty-seven (27) consecutive trademark cases it filed.  In each case, Judge Collins was not the originally assigned judge.[2]  *See* RFJN, Exhs. 8-29; Kelly Decl. at ¶ 30, Exh. F.  Nonetheless, in all but two cases, Judge Collins accepted the cases for reassignment pursuant AMPAS' filing of a Notice of Related Case.  *See* RFJN, Exhs. 8-32,  Kelly Decl. at ¶ 30, Exh. F.  The only two exceptions involved clear and obvious conflicts of interest.  In one of the cases, Judge Collins' family member was an employee of the defendant and in the other case she had a financial interest in the defendant.  *See* RFJN, Exhs. 30-31.

Although Judge Collins accepted both the *Butterfield Auctions* case and twenty-six of the next twenty-eight cases for reassignment, one of the cases she accepted was denied reassignment because the originally assigned judge deemed the matters unrelated while the other was dismissed before a ruling on reassignment could be made.  *See* RFJN, Exh. 32; Kelly Decl. at ¶¶ 30-31, Exh. F.  Like the cases that were denied reassignment, not a single one of the twenty-five (25) cases reassigned to Judge Collins met the requirements necessary to constitute a related case under any of the applicable General Orders of this Court.

For example, AMPAS filed twenty (20) of the twenty-five (25) reassigned cases between August 27, 2001, when it filed the *Butterfield Auctions* case, and February 2007.  *See* RFJN, Exhs. 7-26; Kelly Decl. at ¶¶ 30, 32, Exh. F.  During that period, General Order 224 was in effect, which precluded the relation of any case filed more than a year after a determination had been made on the merits.  *See* RFJN, Exh. 1 (General Order 224).  In each of these twenty (20) cases, AMPAS filed a Notice of Related Case claiming that the new case related to the *Harwood* case filed back in 1999 even though each case was filed well after the one year

---

2    In several cases, not only was Judge Collins not initially assigned the case, but she was not the second judge assigned either (i.e., a few of the AMPAS-Collins cases went back to the clerk for random reassignment, were reassigned to other judges, and then still ended up being transferred to her).

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

5

anniversary of the closure date (November 29, 1999) for *Harwood*.  *See* RFJN, Exhs. 7-26; Kelly Decl. at ¶¶ 30, 32, Exh. F.  As such, not one of these twenty (20) lawsuits met the requirements for reassignment to Judge Collins.

The same is true with respect to the three cases reassigned to Judge Collins between May 2007 and September 2007.  In March 2007, the Court adopted General Order 07-02, which superseded General Order 224.  *See* RFJN, Exh. 2.  General Order 07-02 further restricted the circumstances under which a case could be deemed related to a previously filed matter.  Specifically, a case could not be deemed related simply because it involved the same trademark (assuming the timing requirements were otherwise satisfied).  *Compare* RFJN, Exh. 1 (General Order 224) *with* RFJN, Exh. 2 (General Order 07-02).  Instead, cases could only be deemed related if they either arose from the same or similar transaction, called for a determination of the same or substantially similar questions of law *and* fact, or for other reasons would entail substantial duplication of labor if heard by different judges.  *See* RFJN, Exh. 2 (General Order 07-02) at ¶ 5.1(a)-(d).  Despite not meeting any of these requirements, AMPAS filed a Notice of Related Case in all three cases that were filed while General Order 07-02 was in effect, incredibly claiming that each matter related back to the 1999 *Harwood* case.  *See* RFJN, Exhs.26-29; Kelly Decl. at ¶¶ 29, 32, Exh. F.  As a result, each of these three cases was subsequently reassigned to Judge Collins.  *See id.*

The most egregious "gaming" of the system, however, came with the reassignment of *AMPAS I* to Judge Collins.  AMPAS filed *AMPAS I* in May 2010.  At that time, the Court had adopted General Order 08-05, which had superseded General Order 07-02 and its successor, General Order 08-01.  *See* RFJN, Ex. 4.  Regardless, Paragraph 5.1.1 of General Order 08-05 maintains the same requirements for relating a case as General Order 07-02: the matter must arise from the same or similar transaction as the prior case, the matter must call for a determination of the same or substantially similar questions of law *and* fact as the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

6

prior case, or for other reasons, the matter would entail substantial duplication of labor if heard by different judges. *See id.* at ¶ 5.1.1. The fact that the cases involve the same trademark(s) is not sufficient to relate the cases or to reassign the matter to the prior judge. *See id.* Again, despite not meeting any of these required criteria, AMPAS filed a Notice of Related Case claiming that *AMPAS I* related to an astonishing 16 of the 24 cases previously filed by AMPAS from 1999 to present, including the original 1999 *Harwood* case. *See* RFJN, Exh. 33 (Dkt. 5). As with the other twenty-four (24) cases, Judge Collins improperly accepted *AMPAS I* for reassignment. *See id.*

### B. Judge Collins' June 21, 2013 Rulings In This Action Demonstrate A Clear Bias In Favor Of AMPAS

In October 2009, AMPAS' counsel retained a "non-testifying litigation consultant" by the name of Joe Presbrey to identify domain names containing AMPAS' marks within domain name strings resolving from GoDaddy's parked page servers. *See* Kelly Decl. ¶ 4. Eight months later, AMPAS filed *AMPAS I* action based entirely on the domain names discovered by this "consultant." *See id.* Despite being the only fact witness with knowledge regarding the discovery of these domain names and the creation of purported screenshots related thereto, AMPAS refused to identify the witness in its Initial Disclosures or at any other time during the course of discovery. *See id.* Indeed, AMPAS refused to even disclose the existence of this witness for years after the commencement of litigation. *See id.*

In light of AMPAS' failure to produce its "non-testifying litigation consultant" as either a fact or expert witness, GoDaddy filed a motion to exclude this witness from testifying either on summary judgment or at trial. *See id.* at ¶¶ 5-12; RFJN, Ex 34 (Dkt. 414). On June 21, 2013, Judge Collins issued a series of orders in *AMPAS I*, including an order granting AMPAS' motion to exclude two of GoDaddy's experts while concurrently denying GoDaddy's motion to exclude

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

7

AMPAS' untimely disclosed witness even though she recognized that (i) the consultant was a fact witness, (ii) AMPAS had an affirmative obligation to disclose this witness as part of its initial disclosures, and (iii) that AMPAS violated its obligations under Rule 26. *See* Kelly Decl. ¶¶ 13-15, Exh. A; RFJN, Exh. 35 (Dkt. 492). Indeed, despite the mandatory sanctions under Rule 37 of the Federal Rules of Civil Procedure, Judge Collins denied GoDaddy's motion and refused to impose *any* sanctions on AMPAS at all. *See id.* Instead, Judge Collins continued fact discovery for the limited purpose of allowing discovery of Presbrey so that AMPAS could gather the evidence necessary to salvage its claim. *See id.*; RFJN, Exh. 37 (Dkt. 504).

## C.    Extrajudicial Statements By Judge Collins Warrant Recusal

Rather than allowing GoDaddy to be heard on its Rule 37 motion, AMPAS' motion to exclude two of GoDaddy's experts, and the parties' cross-motions for summary judgment on June 24, 2013 as scheduled, Judge Collins issued an order cancelling the scheduled oral argument and mandating instead that the parties appear for a status conference on the same date. *See* Kelly Decl. at ¶ 16; RFJN, Exh. 36 (Dkt. 493). Judge Collins specifically ordered the parties to meet and confer in advance of the Status Conference to discuss various topics, including settlement. *See id.*

At the June 24, 2013 Status Conference, Judge Collins began by warning GoDaddy about her inclination to rule in AMPAS' favor:

> I put settlement in there because it does seem to me that somewhere around here it might be good **now that you [found] out how things are going** to discuss settlement or to have your settlement conference whether you do that now or after discovery of Mr. Presbrey, whatever. **But it's certainly, time to start thinking about that because I think you can see the outlines of the way it's going**."

Kelly Decl., ¶ 17, Exh. B (June 24, 2013 Transcript) at 4:14-21 (emphasis added).

GoDaddy's counsel attempted to explain to Judge Collins that additional

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

mediation would be a waste of the parties' and the Court's time, given past experiences, the vast differences in the parties' settlement position, and the recent adverse rulings by the Court.  *See* Kelly Decl., ¶ 18, Exh. B.  Nonetheless, GoDaddy's counsel explained that he would discuss the possibility of future mediation with GoDaddy, but that his sense was that additional mediation would not be useful, and that GoDaddy would likely not be inclined to participate in further settlement discussions before trial.  *See id.*

In response, Judge Collins rebuked GoDaddy's counsel: "[Y]ou can make it clear to your client that you're going to go to another settlement conference before I would let this case go to trial. . . . [T]here will be another settlement attempt before this case goes to trial."  *Id.* at ¶ 19, Exh. B at 8:19-9:14.  Judge Collins then further stated: "I'm telling you you will go to settlement before this case ever goes back to trial. That's for sure, you'll go back" even though the parties just completed their court-ordered mediation three months earlier.  *Id.* at 15:8-10.

### D.   AMPAS Repeatedly Flaunts Judge Collins' Bias In Attempt To Coerce Settlement

GoDaddy attended an informal meeting amongst counsel in this action on August 27, 2012.  *See* Nima Decl. ¶ 20.  The meeting took place at the offices of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") in Los Angeles, California.  *See id.*  GoDaddy was represented by Nima Kelly, GoDaddy's General Counsel, and Aaron McKown of Wrenn Bender McKown & Ring LLLP, its counsel of record in this case.  *See id.*  AMPAS was represented by David Quinto of Quinn Emanuel, Bob Foote of Foote Milke Chavez & O'Neill LLP, Stuart Singer of Bois, Schiller & Flexner LLP, and Scott Miller, in-house counsel for AMPAS.  *See id.*

While David Quinto and Quinn Emanuel are not counsel of record for AMPAS in *AMPAS I*, Mr. Quinto has been involved throughout that case, including as a participant in all settlement discussions.  *See id.* at ¶ 21.  For example, Mr. Quinto explained during his deposition in *AMPAS I* that he formulated the initial

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

9

claims asserted in this action, aided AMPAS in securing counsel of record due to a conflict of interest presented by Quinn Emanuel's representation of Google in other matters, and joined in strategy discussions with AMPAS' counsel. *See id.* Mr. Quinto also attended hearings in *AMPAS I* before Judge Collins though there was no apparent reason for his presence. *See id.* In fact, Mr. Quinto was deposed in *AMPAS I* because of his extensive pre-litigation involvement. *See id.*

During the August 27, 2012 meeting, GoDaddy explained the parameters of a potential settlement, which did not include any monetary terms. *See id.* at ¶ 22. Mr. Quinto responded by stating that GoDaddy should know that Judge Collins "is the Academy's judge." Mr. Singer then explained that any settlement would require a substantial monetary payment at which point he offered an eight-figure number to resolve the case. *See id.* The presentation by Mr. Quinto and Mr. Singer clearly implied that either GoDaddy could reach an agreement with AMPAS at that time or Judge Collins would award a substantially higher judgment later. *See id.*

This theme repeated itself seven months later. Pursuant to Judge Collins' October 5, 2010 Scheduling Order in *AMPAS I*, the parties participated in a formal mediation with the Hon. Stephen E. Haberfeld (Ret.) on March 18, 2013. *See id.* at ¶ 23. Although the parties were separated for the majority of the mediation, at one point, AMPAS requested that it be permitted to make a presentation to GoDaddy. *See id.* AMPAS' presentation, made in the presence of Judge Haberfeld (Ret.), included a further attempt to leverage its long-standing relationship with Judge Collins and the repeated favorable rulings issued by her in *AMPAS I* as expected from "the Academy's judge." *See id.*

The tipping point, however, came six months later. On September 17, 2013, Steve Madison, another partner at Quinn Emanuel, sent an unsolicited email to Bill Sonnenborn, a senior advisor for KKR & Co., L.P. ("KKR"); KKR holds a seat on GoDaddy's Executive Committee. *See id.* at ¶ 26. Mr. Madison's letter encouraged GoDaddy to settle with AMPAS. Specifically, Mr. Madison explained that the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

10

dispute was "ripe for resolution" given that Judge Collins "has handled all [of] the Academy's federal litigation for more than 15 years [and given that s]he ruled in The Academy's favor on most issues but damages and fees have yet to be determined." *Id.*, Exh. E. The improper contact by Mr. Madison was eerily similar in tone to the August 2012 meeting with Mr. Quinto and the mediation in March 2013, including Mr. Quinto's statement that Judge Collins "is the Academy's judge." *See id.* at ¶ 27.

### E.   Judge Collins' Bias May Stem From Her Daughter's Profession As An Actress And Her Appearance On AMPAS' Website

As part of its investigation into the relationship between Judge Collins and AMPAS, GoDaddy discovered that Judge Collins' daughter, Rachel Montez Collins, is a professional actress. *See id.* at ¶ 36. Information about Judge Collins' daughter is located on multiple pages of AMPAS' website. *See id.*, Exh. G.

## III.   LEGAL STANDARD

The procedure and grounds for the recusal of a federal judge are set forth in two separate sections of Title 28: Section 144 and Section 455(a). *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980); *see also* 28 U.S.C. §§ 144 and 455(a). To recuse a judge under Section 144, a litigant must submit, along with its motion, an affidavit stating "the facts and the reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144. The Court must accept as true all factual allegations asserted in the affidavit. *See Berger v. United States*, 255 U.S. 22, 35-36 (1921); *Church of Scientology of California v. Cooper*, 495 F.Supp. 455, 459 (C.D. Cal. 1980) ("[T]he Court recognizes that the factual allegations contained in the Affidavit must be taken as true and the Court has no power or authority to contest in any way whatsoever the necessary acceptance of truthfulness of the facts alleged . . . ."). In order to ensure that such motions are made for a proper purpose, the affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Section 455(a) permits a litigant to seek recusal of a judge "in any proceeding in which [the judge's] impartiality might reasonably be questioned."  28 U.S.C. § 455.  This statute embodies the principle that "to perform its high function in the best way justice must satisfy the appearance of justice."  *In re Murchison*, 349 U.S. 133, 136 (internal quotation marks omitted).

Section 455 "complements § 144 and imposes a self-enforcing duty on a judge to consider any obvious basis for recusal, even when the only basis is in personal bias or prejudice."  *Shek v. Children's Hospital & Research Ctr. of Oakland*, No. C-13-2017 WHA, 2013 WL 4014991 at *2 (N.D. Cal. Aug. 5, 2013) (citing *Sibla*, 624 F.2d at 868).  "The upshot is a properly filed motion and affidavit under § 144 requires a judge to first consider any obvious grounds for recusal under § 455; then, if the judge declines recusal, the matter is referred to another judge for consideration, if the affidavit prepared pursuant to § 144 is facially sufficient." *Shek*, 2013 WL 4014991 at *2.

The test for recusal in the Ninth Circuit under Section 144 and Section 455(a) is the same:  "[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 714 (9th Cir. 1990); *see also Pesnell v. Arsenault*, 543 F.3d 1038, 1044 (9th Cir. 2008) (same); *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (same); *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (same); *U.S. v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (same).  The basic rule is that "[a] judge may ***not*** sit in cases in which his 'impartiality might reasonably be questioned.'"  *Holland*, 519 F.3d at 912 (emphasis in original) (quoting 28 U.S.C. § 455).

A litigant need not prove actual bias in order to recuse a judge.  The mere appearance of bias is sufficient to warrant recusal.  *See In re School Asbestos Litigation*, 977 F.2d 764, 776 (3d Cir.1992).  "If it is a close case, the balance tips in favor of recusal."  *Holland*, 519 F.3d at 912.  Whenever a judge's impartiality

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

"might reasonably be questioned" in a proceeding, section 455 requires the judge to disqualify himself or herself *sua sponte*. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 859-60 (1988)); *Holland*, 519 F.3d at 913 ("The goal of section 455(a) is to avoid even the appearance of partiality.").

Accordingly, it does not matter whether the district court judge actually harbors any bias for or against a party or a party's counsel. "It is a general rule that the appearance of partiality is as dangerous as the fact of it." *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980) (citations omitted). This is so because the recusal statute concerns not only fairness to individual litigants, but, equally important, it concerns "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." *In re School Asbestos Litigation*, 977 F.2d at 776 (citing *Liljeberg*, 486 U.S. at 859-60; H.R.Rep. No. 93-1453, 93d Cong., 2d Sess. 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355)). As a result, recusal is required whenever a reasonable disinterested observer would "harbor doubts" about the judge's impartiality. *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980); *accord Conforte*, 624 F.2d at 881.

In this case, the fifteen (15) year history of improper reassignment of non-related AMPAS cases to Judge Collins, which she accepted, AMPAS' repeated representation that Judge Collins' is "the Academy's judge," Judge Collins' June 21, 2013 rulings, and Judge Collins' extrajudicial statements at the June 24, 2013 Status Conference collectively create a clear appearance of bias such that a reasonable person with knowledge of all of the facts might reasonably question Judge Collins' impartiality. As such, Judge Collins should be recused.

////

////

MOTION TO RECUSE THE
HON. AUDREY B. COLLINS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## IV.    THE RECORD DEMONSTRATES AN ACTUAL OR APPARENT BIAS BY JUDGE COLLINS IN FAVOR OF AMPAS

The critical inquiry on the instant motion is whether the totality of the circumstances provides an *appearance* of partiality by Judge Collins. *See, e.g.*, *Conforte*, 624 F.2d at 881 ("[T]he appearance of partiality is as dangerous as the fact of it."); *Herrington v. Sonoma County*, 834 F.2d 1488, 1502 (9th Cir. 1987) ("[S]ection 455(a) covers circumstances that appear to create a conflict of interest, whether or not there is actual bias."); *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir. 1987) (disqualification rule is "prophylactic and cosmetic; it functions as 'a fence around the law' and to enhance the image of the court"). This objective, appearance-based standard is especially important where, as here, the judge may serve as the trier of fact on all remaining issues at trial. *See* Kelly Decl. ¶ 37, Exh. H (AMPAS contends that all remaining issues in this case are to be resolved by Judge Collins, including the issues of bad faith and statutory damages; GoDaddy disputes this contention).

The evidence of Judge Collins' bias, whether actual or apparent, arises from four categories of conduct: (1) Judge Collins' acceptance of more than two dozen unrelated AMPAS cases over the past fifteen (15) years in contravention of the Court's General Orders; (2) Judge Collins' deviation from her own prior rulings and the Federal Rules of Civil Procedure in order to salvage AMPAS' claims from dismissal in *AMPAS I*; (3) Judge Collins' extrajudicial statements on June 24, 2013, which telegraphed her predetermined outcome of both *AMPAS I* and this case in order to coerce GoDaddy into settlement over its objection, and (4) the repeated statements by AMPAS' counsel that Judge Collins is "the Academy's Judge" as use in leveraging its settlement position.

### A.    More Than Two Dozen Cases Were Improperly Reassigned To Judge Collins Over The Last Fifteen Years

Unbeknownst to the litigants and judicial officers of the Central District,

14

AMPAS and its counsel have engaged in a systematic and underhanded attempt over the course of the past fifteen (15) years to secure an advantage to which no litigant is entitled—a dedicated, favorable judicial officer to sit in judgment over every party by whom AMPAS claims to have been wronged.  After completing an extensive assessment of the cases filed by AMPAS in the Central District during those years, and the related outcomes of those matters, GoDaddy can definitively attest to the fact that, by all accounts, AMPAS' efforts have been successful.

Since August 27, 2001, AMPAS has filed with each of its twenty-eight (28) trademark lawsuits a baseless Notice of Related Case claiming that the new lawsuit somehow related to the original AMPAS-Collins case filed in 1999.  For example, in *AMPAS I*, AMPAS' counsel filed a Notice of Related Case claiming that *AMPAS I* related back to **sixteen** AMPAS-Collins cases filed from 1999 to 2007, including the very first AMPAS-Collins case (i.e., *AMPAS v. Harwood*).  The evidence presented, however, demonstrates that those prior cases did not meet any of the requirements for being deemed related.  Specifically, other than involving one or more of AMPAS' trademarks, the cases did **not** involve the same or similar transaction, the cases did **not** call for a determination of the same or substantially similar questions of law *and* fact, and the cases did **not** entail substantial duplication of labor if heard by different judges.  *See* RFJN, Exhs. 5-29; Kelly Decl. ¶ 30, Exh. F.  In fact, *AMPAS I* and this case do not even contain the same legal claims and factual scenarios as any of the prior cases that AMPAS claimed were related.  Nonetheless, AMPAS has successfully secured its preferred judicial officer in virtually every instance.

Judge Collins, for her part, has been complicit in this process.  She has accepted for reassignment 26 of the 28 cases despite none of them being appropriate for transfer under the Court's General Orders.  Indeed, she only refused to accept a transfer of an AMPAS trademark case in the rare instance where she has a direct financial interest in the adverse party.  *See* RFJN, Exhs. 30-31.  The result is a

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

fifteen (15) year judicial relationship involving more than two dozen cases, with repeated and reliable positive outcomes for AMPAS, and an ever-increasing relationship and rapport between AMPAS, its counsel[3] and Judge Collins.

Of course, merely having the same judge in two dozen cases over a fifteen (15) year period would not, in and of itself, comprise sufficient evidence of bias, nor create a sufficient question of partiality, under U.S.C. sections 144 and 455(a), to support recusal assuming that the assignments were proper.  However, as discussed in detail below, this relationship between AMPAS and Judge Collins has become so friendly and familiar that AMPAS now routinely refers to Judge Collins as "the Academy's Judge" – including for the express purpose of gaining negotiating leverage in mediation and settlement proceedings.  Similarly, Judge Collins' affinity for AMPAS and its counsel has manifested itself most clearly in two significant ways, each independently justifying recusal:  (1) Judge Collins' disregard of her prior rulings and the Federal Rules of Civil Procedure in order to salvage AMPAS' claims in *AMPAS I*; and (2) her extrajudicial statements not only telegraphing her opinion as to the ultimate outcome of both *AMPAS I* and this case despite possibly being the ultimate trier of fact, but the leveraging of that belief in order to coerce GoDaddy into settlement, including the threat of holding GoDaddy's ability to proceed to trial hostage until it submits to a second-court mandated mediation.  The totality of these circumstances warrants Judge Collins' recusal.

**B.**   **Judge Collins' June 21, 2013 Rulings in *AMPAS I* Bolster an Appearance of Bias In Favor of AMPAS**

While the Supreme Court has noted that an adverse ruling will rarely evince a bias in favor of a party such as to warrant recusal, the Supreme Court recognized

---

[3]   David Quinto and Quinn Emanuel were the attorneys of record (or, at least, one of the attorneys of record) in all but two of the AMPAS-Collins cases.  One of the two exceptions is this action, where they are not attorney of record, but have been extensively involved in the case.  *See* Kelly Decl. ¶ 30, Exh. F.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

that there are rare occasions when that may very well occur.  *See Liteky v. United States*, 510 U.S. 540, 551-55 (1993) (explaining that "only in the rarest circumstances [will rulings] evidence the degree of favoritism or antagonism required" to warrant recusal).  The June 21, 2013 rulings issued by Judge Collins in this case, particularly her denial of GoDaddy's Rule 37 motion to exclude Joe Presbrey despite AMPAS' intentional shielding of Presbrey from discovery for more than four years, constitutes one of those rare circumstances when a court's ruling, in and of itself, is sufficient to demonstrate a bias justifying recusal.  *See* Kelly Decl. ¶¶ 14-15; RFJN, Exh 36 (Dkt. 492).

Mr. Presbrey is a litigation consultant who created software programs that found the accused domain names at issue in this case.  Mr. Presbrey's software programs allegedly captured screenshots of the parked pages now at issue, and AMPAS used those screenshots as the basis for this litigation.  AMPAS hired Mr. Presbrey for this specific purpose in October 2009, nine (9) months before it filed this action.  *See* Kelly Decl. ¶ 4.

The Federal Rules of Civil Procedure ("FRCP") require that parties disclose all witnesses who "have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ."  FRCP 26(a)(1)(A)(i).  The rule also requires parties to supplement their initial disclosures "in a timely manner" upon determining that the initial disclosures are materially incomplete or inaccurate.

In blatant, purposeful violation of this rule, AMPAS intentionally withheld Mr. Presbrey's identity from its Initial Disclosures and repeatedly asserted the attorney-client privilege and work product doctrine as bases to shield him and evidence related to him from discovery.  *See* Kelly Decl. ¶¶ 5-11.  GoDaddy only discovered that AMPAS had employed Mr. Presbrey to discover domain names when Enoch Liang, outside counsel for AMPAS, inadvertently disclosed his involvement in December 2011.  Kelly Decl. ¶ 6.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

17

In response, GoDaddy filed a motion to compel documents from, and the identity of, Presbrey in March 2012.  AMPAS opposed GoDaddy's motion on the grounds of attorney-client privilege and attorney work product doctrine.  Judge Woerhle upheld the asserted privilege, but warned that "[s]omebody's going to have to testify what these pages looked like when they went there and you may want to just make up your mind about that sooner rather than later."  Kelly Decl. ¶ 9.  Despite this admonition, AMPAS elected not to disclose Mr. Presbrey or to produce his software and related data during either fact or expert discovery.  *See id.* at ¶ 10.

With discovery closed, and AMPAS unable to demonstrate that the majority of the accused domain names were involved in the programs at issue, GoDaddy moved for summary judgment as to each of those domain names.  *See id.* at ¶ 11.  In opposing GoDaddy's motion, AMPAS disclosed Mr. Presbrey for the first time by submitting a declaration from him for the purpose of authenticating screenshots of the parked pages after it realized that it could not otherwise prove that any of the challenged domain names participated in the programs at issue.  In response, GoDaddy filed a motion to exclude the testimony of Mr. Presbrey for not having been disclosed pursuant to the federal rules.  *See* Kelly Decl. ¶ 12.

Judge Collins denied GoDaddy's motion.  In her ruling, she acknowledged that FRCP 37 "gives teeth" to FRCP 26 "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *See* RFJN, Exh. 35 (Dkt. 492) at 10.  Moreover, Judge Collins admitted that AMPAS' "decision not to disclose Presbrey . . . was ill-advised" and that "the Academy could have avoided this whole problem by timely disclosing Presbrey."  Yet, Judge Collins denied GoDaddy's motion.  *See id.* at 12-13; Kelly Decl. ¶ 15, Exh. A.  In fact, despite Rule 37's mandate of sanctions against a party who knowingly fails to disclose a witness, Judge Collins chose to impose no sanctions at all.  *See id.*  Instead, Judge Collins ordered limited discovery relating to Presbrey so that AMPAS could secure the evidence it needed in order to salvage its claims.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

MOTION TO RECUSE THE
HON. AUDREY B. COLLINS

AMPAS' claims against GoDaddy fail without Mr. Presbrey. Without the ability to authenticate the allegedly infringing web pages, AMPAS had no way to prove that the challenged domain names participated in GoDaddy's parked page programs. Judge Collins admitted that the Academy violated Rules 26 and 37, and yet ignored the rules and allowed AMPAS to present Mr. Presbrey's evidence, thereby salvaging AMPAS' case from certain dismissal.

While the denial of GoDaddy's motion and the Court's refusal to impose mandatory sanctions under Rule 37 likely constitute an abuse of the Court's discretion, the most telling example of Judge Collins' bias with respect to this ruling is the pretext she used to justify her denial of GoDaddy's motion. Judge Collins explained that she would not impose any sanctions against AMPAS despite its clear violation of its obligations under Rule 26 because GoDaddy had engaged in discovery misconduct of its own when it failed to admit unequivocally in response to Requests for Admissions served on the last day of discovery that certain domain names were "in" its parked page programs. *See* Kelly Decl. ¶ 15, Exh. A. Such misconduct, if any, is wholly irrelevant to whether AMPAS met its continuing obligation under Rule 26.

AMPAS violated its obligation more than three years before GoDaddy's purported misconduct. AMPAS also made a repeated and conscious decision to shield Presbrey from discovery; GoDaddy's responses on the last day of written discovery did not change that decision. Moreover, AMPAS was aware of GoDaddy's responses to written discovery more than eight months before it finally disclosed Presbrey. AMPAS had every opportunity to disclose Presbrey as an expert in a timely manner; it chose not to do so with full knowledge of GoDaddy's responses to discovery and positions in this litigation.

The appearance of partiality in this instance is heightened by the fact that Judge Collins' decision to resurrect AMPAS' claims from the brink of dismissal runs afoul of her own prior rulings in similar, and indeed, less egregious situations.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

19

For example, in *Accentra Inc. v. Staples, Inc.*, CV 07-5862 ABC RZX, 2010 WL 8450890 (C.D. Cal. Sept. 22, 2010), Judge Collins found a party's late disclosure of witnesses "after the initial disclosures under Rule 26(a)(1)(4), after the close of discovery, and after the deadline under Local Rule 16-2.4" to be "inexcusable." *Id*. at 7.  In that case, Judge Collins did not continue trial or re-open discovery to allow the late disclosing party to present its witnesses; the witnesses were properly excluded and mandatory sanctions under Rule 37 imposed—a stark contrast to the leniency shown to AMPAS in this action.  *See id.*; *see also Vinotemp Int'l Corp. v. Wine Master Cellars, LLLP,* CV 11-1543 ABC PLAX, 2013 WL 5366405 (C.D. Cal. Feb. 5, 2013) (Judge Collins granted Rule 37 motion based on the fact that "Wine Master's failure to disclose damages still impedes Vinotemp's ability to defend against these claims at trial. The Court would then have to move the trial date to allow Vinotemp to conduct additional discovery, which demonstrates that Wine Master's failure was not harmless.").

It is an undeniable truth that the nature of litigation ensures that litigants experience adverse judicial rulings in any case.  GoDaddy received many such rulings in *AMPAS I* without jumping to the conclusion that Judge Collins harbored a personal bias in favor of AMPAS.  Yet all of the factors discussed herein, combined with the demonstrated length to which Judge Collins has gone in order to salvage AMPAS' claims to the detriment of GoDaddy—who spent more than three years implementing a litigation strategy based on AMPAS' abject refusal to disclose Mr. Presbrey—evidence a bias, whether apparent or actual, in favor of AMPAS.

Even if Judge Collins' June 21, 2013 rulings are not, on their own, sufficient to justify recusal, those rulings, when considered in conjunction with the totality of the circumstances presented—the repeated and improper reassignment of AMPAS cases to Judge Collins, Judge Collins' acceptance of those cases for reassignment, Judge Collins' remarks and rulings in *AMPAS I*,  AMPAS' repeated assertions that Judge Collins is "the Academy's Judge" for purposes of gaining settlement leverage,

MOTION TO RECUSE THE
HON. AUDREY B. COLLINS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

and AMPAS' recent assertion that Judge Collins, not a jury, will serve as the ultimate trier of fact on the remaining claims and the issuance of statutory damages—create a pervasive and undeniable appearance of partiality.   Without question, the totality of these circumstances would cause a "reasonable person with knowledge of all the facts [to] conclude that the judge's impartiality might reasonably be questioned."   *Pesnell*, 543 F.3d at 1044; *Hernandez*, 109 F.3d at 1453; *Studley*, 783 F.2d at 939.

C.   **Judge Collins' Extrajudicial Statements At The June 24, 2103 Status Conference Warrant Recusal**

1.   **Statements Demonstrate Judge Collin's Pre-Determined Outcome of *AMPAS I* and This Case**

At the June 24, 2013 Status Conference, Judge Collins openly hinted at her predetermined outcome of both *AMPAS I* and this case, which she used in an attempt to force GoDaddy into a second court-ordered mediation (and ultimate settlement) against its will.   In effect, Judge Collins attempted to coerce GoDaddy into a settlement with AMPAS with veiled threats as to how she will ultimately rule if GoDaddy refuses to settle with AMPAS.   Although AMPAS' claims has been pending for nearly four years, with various attempts at both formal and informal settlement, the parties have never been particularly close to settlement.   Kelly Decl ¶¶ 20-26.   At the June 24, 2013 Status Conference in *AMPAS I*, Judge Collins began by warning GoDaddy about her inclination to rule in the Academy's favor:

> I put settlement in there because it does seem to me that somewhere around here it might be good **now that you [found] out how things are going** to discuss settlement or to have your settlement conference whether you do that now or after discovery of Mr. Presbrey, whatever. **But it's certainly, time to start thinking about that because I think you can see the outlines of the way it's going.**"

Kelly Decl. ¶ 17, Exh. B (June 24, 2013, Transcript) at 4:14-21 (emphasis added).

GoDaddy's counsel Aaron McKown then attempted to explain to Judge

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

21

Collins that additional mediation would be a waste of the parties' and the Court's time, given past experiences and given the recent rulings by the Court. *See id*. at ¶ 18. Mr. McKown explained that he would discuss the possibility of future mediation with GoDaddy, but that his sense was that additional mediation would not be useful, and that GoDaddy would likely not be so inclined. *See Id.* Judge Collins, in response, stated: "[Y]ou can make it clear to your client that you're going to go to another settlement conference before I would let this case go to trial. . . . [T]here will be another settlement attempt before this case goes to trial. *Id.* at ¶ 19, Exh. B at 8:19-9:14. Judge Collins then further stated: "I'm telling you you will go to settlement before this case ever goes back to trial. That's for sure, you'll go back." *Id.* at 15:8-10.

In order to justify her strong-arm demands that GoDaddy attend a further court-ordered mediation, Judge Collins appeared to believe that the parties' participation in a previously court-ordered mediation occurred too early in the case. *See id.*at 9:11-14 ("I mean I understand you did something early. That's fine; but, obviously, there will be another -- there will be another settlement attempt before this case goes to trial."). The parties, however, had just attended a court-ordered mediation three months earlier and were vastly apart with respect to settlement. *See* Kelly Decl. ¶ 22.

Judge Collins' statements reveal not only her predetermined outcome for both *AMPAS I* and this case but also the lengths to which she will use her extraordinary authority to coerce GoDaddy into submitting to settlement on AMPAS' terms. Such extrajudicial statements on their own are sufficient to warrant the recusal of Judge Collins from this action. *See FSLIC v. Dixon*, 835 F.2d 554, 559-60 (5th Cir. 1987) ("The court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here."). Judge Collins' willingness to stack the deck to insure that

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

22

this case reaches the outcome she intends shows actual prejudgment and destroys any semblance of impartiality.  This is particularly problematic where, as possible here, Judge Collins may be the ultimate trier of fact at trial and the sole determiner of the amount of statutory damages.  As such, her conduct warrants disqualification under both Section 144 and Section 455(a).

It is well-established in this Circuit that a judge who provides strategic advice to one side might reasonably be perceived as partisan, warranting disqualification. *See United States v. Jacobs*, 855 F.2d 652 (9th Cir. 1988).  In *Jacobs*, the trial judge was disqualified for advising defense counsel "You have got a cinch in this case" and explaining how to obtain an acquittal, which the judge subsequently granted. *Id*. at 654.  Judge Collins has done the same thing here.  At the July 24, 2013 hearing, Judge Collins specifically advised the parties that "it is true I will get the case under the local rules" and then again intimated that the case would not proceed to trial by stating, "and as I'm sure I can safely presume that this case is not going to trial, it will be consolidated."  Kelly Decl., ¶ 18, Exh. B at 8:15-18.  This alone justifies disqualification under the *Jacobs* standard.

Judge Collins' statements, when taken in their totality and combined with the statements regarding settlement and the certainty with which Judge Collins' believes she will preside over future cases involving AMPAS has gone much further than simply advising the parties but has effectively advised AMPAS on how to game the system, best prosecute its case and secure early settlements, not only in this action but in every matter brought in the Central District.

### 2.   Judge Collins Encouraging AMPAS To File and Relate A This Lawsuit For Belatedly Identified Domain Names Independently Warrants Recusal

As part of her June 21, 2013 rulings in *AMPAS I*, Judge Collins dismissed those domain names that AMPAS attempted to add to months after the deadline ordered by the Court.  As part of those rulings, however, Judge Collins ordered the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

23

parties to meet and confer to discuss "how the parties intend to handle the domain names that the Academy [untimely] disclosed."  RFJN, Exh. 37 (Dkt. 493).  At the June 24, 2013 Status Conference, AMPAS' counsel indicated that it would file a separate lawsuit to address those domain names.  Judge Collins then explained that "[she] will get the case under the local rules and presuming – as I'm sure I can safely presume that this case is not going to trial, it will be consolidated."  Kelly Decl., ¶ 19, Exh. B (June 24, 2013, Transcript) at 8:15-18.  In effect, Judge Collins advised AMPAS how to get around her prior order setting a strict timeline to add these additional domain names by simply filing another (this) lawsuit.

Judge Collins' advice in this regard is similar to the type of advice that the Second Circuit determined justified recusal of the judge in New York's recent "Stop-and-Frisk" case.  In *Daniels v. City of New York,* Judge Scheindlin, presiding over a motion to enforce terms of a settlement, suggested to the plaintiff's counsel that he file a new lawsuit and relate it so that she would preside over the new matter. *See In re: Reassignment of Cases*, 736 F.3d 118, 124-25 (2d. Cir. 2013).  The Second Circuit, acting *nostra sponte*, held that a reasonable observer could question the impartiality of the judge where the judge urged a party to file a new lawsuit, suggested that such a claim could be viable, and advised the party to designate it as a related case so that the case would be assigned to her.  *See id.* at 125 ("The appearance of partiality stems in the first instance from comments made by Judge Scheindlin that a reasonable observer could interpret as intimating her views on the merits of a case that had yet to be filed, and as seeking to have that case filed and to preside over it after it was filed.").

Judge Collins' statements are analogous.  Rather than simply dismissing the untimely disclosed domain names pursuant to the terms of a definitive Scheduling Order, Judge Collins ordered the parties to meet and confer to discuss how those domain names should be handled, suggesting that AMPAS file a second lawsuit. *See* RFJN, Exh. 36 (Dkt. 493).  After making it clear that she would preside over the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

second lawsuit, Judge Collins again expressed her opinion about the ultimate outcome of both cases ("now that you [found] out how things are going"), which she used to coerce GoDaddy into further settlement discussions before indicating the two cases would likely be consolidated.  *See* Kelly Decl. ¶ 17, Exh. B.  Like the Second Circuit, the Court should find that such statements create an appearance of partiality mandating Judge Collins' recusal from this action.

**D.**     **Repeated Statements by AMPAS and Quinn Emanuel that Collins' is "the Academy's Judge"**

On multiple occasions, AMPAS has claimed that Judge Collins is "the Academy's judge."   The first occasion occurred in August 2012 at an informal meeting attended by counsel for the parties.  *See* Nima Decl. ¶ 20.  At that meeting, AMPAS demanded a monetary amount in the eight figure range to settle this case.  As part of its demand, AMPAS' counsel specifically stated that Judge Collins "is the Academy's judge," and implied that GoDaddy could pay the amount demanded or Judge Collins would award that amount or more later.  *Id.*

AMPAS repeated this theme at the parties' March 18, 2013 mediation.  *See id.* at ¶ 21.   At the request of AMPAS' counsel, GoDaddy agreed to listen to a presentation regarding AMPAS' settlement position.  *See id.*   As part of this presentation, which was made in the presence of the mediator, Judge Haberfeld (Ret.),  AMPAS' counsel again attempted to leverage its historical relationship with Judge Collins as a predictor for how the case would conclude.  *See id.*

Although the statements at both the August 2012 meeting and the March 2013 mediation were disconcerting, it was not until GoDaddy received an unsolicited email from Quinn Emanuel in September 2013 that GoDaddy began to suspect that there was much more to AMPAS' relationship with Judge Collins than mere boasting by counsel.  *See id.* at ¶ 26.  On September 17, 2013, Steve Madison, a partner in the Los Angeles office of Quinn Emanuel, wrote an e-mail to Bill Sonneborn, an executive with KKR.  *See id.*, Exh. E.  As discussed above, KKR is a

25

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

business entity that holds a seat on GoDaddy's executive committee; a fact that was obviously not lost on Mr. Madison or Quinn Emanuel. *See id.* The contact with Mr. Sonneborn was made without the prior consent of counsel and constituted a clear violation of the California Rules of Professional Conduct. *See id.*

Mr. Madison's e-mail to Mr. Sonneborn described the AMPAS litigation against GoDaddy, claiming *inter alia* that the case is "ripe for resolution." *Id.*, Exh. E. Mr. Madison's e-mail again explained that Judge Collins is a friend of AMPAS. Specifically, he stated:

> The case was assigned to US District Judge Audrey B. Collins. Judge Collins is a very well respected, careful judge **who has handled all the Academy's federal litigation for more than 15 years. She ruled in The Academy's favor on most issues but damages and fees have yet to be determined.**

*Id.* (emphasis added).

The personal bias of Judge Collins in favor of AMPAS is not latent, but manifest and overt – and perhaps most important, AMPAS and its counsel explicitly use that bias to their advantage in settlement negotiations. These circumstances, in and of themselves, are sufficient to cause a "reasonable person with knowledge of all the facts [to] conclude that the judge's impartiality might reasonably be questioned." *Pesnell*, 543 F.3d at 1044; *Hernandez*, 109 F.3d at 1453; *Studley*, 783 F.2d at 939.

## V.   GODADDY'S MOTION IS TIMELY

Litigants do not have an affirmative duty to investigate whether a judge assigned to adjudicate their action has a bias against or in favor of a particular party. *See American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999) ("[A] litigant's duty to investigate facts . . . does not include a mandate for investigations into a judge's impartiality."). Indeed, a litigant may reasonably assume that a judge is not biased. *See Bank of America, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 (9th Cir. 2000) ("[J]udges (and their law clerks) are presumed to be impartial and to discharge their ethical duties faithfully so as to

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

avoid the appearance of impropriety."). Only after sufficient facts arise demonstrating an actual or apparent bias does a litigant have an obligation to act within a reasonable time. *See, e.g.*, *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (noting that Section 144 does not impose a specific time upon which a motion to recuse must be filed, but nonetheless, imposing a timeliness requirement on such motions).

The purpose of a timeliness requirement for recusal motions under Section 144 is to insure that such motions are not used for strategic purposes, but are filed with reasonable promptness after the ground for recusal is ascertained. *See Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991) (affirming disqualification even though motion to disqualify was filed 18 months after the basis for disqualification came to light). The key factor in this good faith analysis is whether the movant allows the district judge to take further action after the basis for recusal is adequately identified. As long as the motion is filed before the district judge takes further substantive action in the case, a motion to recuse will be deemed timely. *See United States v. Furst*, 886 F.2d 558, 581 (3rd Cir. 1989) (recusal motion timely when filed before the trial court was called upon to issue any new rulings) (citing *Smith v. Danyo*, 585 F.2d 83, 86 (3rd Cir. 1978) (same)).

Here, the basis for recusing Judge Collins was not readily apparent until GoDaddy completed its investigation into the relationship between AMPAS and Judge Collins in late-November 2013; GoDaddy's Executive Committee approved filing the motion on December 6, 2013. *See Kelly Decl. ¶ 26.* While statements by AMPAS' counsel in August 2012 and March 2013 that Judge Collins "is the Academy's judge" were disconcerting, the statements alone was not enough to trigger an affirmative obligation to investigate Judge Collins' bias in favor of AMPAS; such puffery is a hazard of dealing with opposing counsel in litigation. Nor were Judge Collins' rulings on June 21, 2013 sufficient to trigger such an obligation—despite what appears to be a clear abuse of discretion in denying

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

GoDaddy's Rule 37 motion to exclude Joe Presbrey.  The law is well-settled that adverse rulings, on their own, generally will not suffice as a basis to recuse a judge.  *See Liteky*, 510 U.S. at 551, 555 (explaining that "only in the rarest circumstances [will rulings] evidence the degree of favoritism or antagonism required" to warrant recusal).

Indeed, GoDaddy had no reason to investigate the partiality of Judge Collins until Steve Madison, a partner at Quinn Emanuel, sent an email to one of GoDaddy's investors in September 2013 in which he admitted that "Judge Collins . . . has handled all the Academy's federal litigation for more than 15 years."  *See* Kelly Decl. at ¶ 25, Exh. E.  At that point, GoDaddy immediately commenced an investigation into the prior history between Judge Collins and AMPAS, an investigation that revealed a sustained history of improper reassignments to Judge Collins of virtually every AMPAS trademark case for the past fifteen (15) years in direct contravention to the Court's General Orders.  *See* Kelly Decl. at ¶¶ 27-33, Exh. F.  GoDaddy completed its investigation into the more than two dozen reassignments in late-November 2013.  *Id*. at ¶ 26.  After reviewing the results of this investigation, it became clear to GoDaddy's Executive Committee that the merits of this motion could no longer be debated.  As a result, the filing of this motion was approved on December 6, 2013.  Given that GoDaddy filed this motion within weeks of completing its investigation, that this motion constitutes GoDad'y's first appearance in this case, and that the Court has not taken any action since its reassignment of the case to Judge Collins, the motion is timely.  *See Preston*, 923 F.2d at 733.

## VI.   <u>CONCLUSION</u>

While no one factor would likely be sufficient to warrant recusal, the totality of the circumstances—the repeated improper reassignment of more than two dozen AMPAS cases over fifteen (15) years, Judge Collins' salvaging of AMPAS' claims on summary judgment in *AMPAS I*, AMPAS' repeated claims that Judge Collins "is

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

the Academy's judge," Judge Collins' extrajudicial statements telegraphing her opinion as to the ultimate outcome in both *AMPAS I* and this case to coerce GoDaddy into settlement negotiations against its will, and the fact that Judge Collins' daughter is an actress who appears on AMPAS' website—would cause a reasonable person with knowledge of all the facts to conclude that Judge Collins' impartiality might reasonably be questioned.   As such, GoDaddy respectfully requests that Judge Collins be recused in this action.

Dated:  January 6, 2014                                    **WRENN BENDER LLLP**
Aaron M. McKown
Paula L. Zecchini

By:  */s/ Aaron M. McKown*
Aaron M. McKown
Attorneys for Defendant
GODADDY.COM, LLC

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

29

**CERTIFICATE OF SERVICE**

Pursuant to L.R. 5-3, I hereby certify that on January 6, 2014, I electronically filed the foregoing document, **NOTICE OF MOTION AND MOTION TO RECUSE THE HON. AUDREY B. COLLINS; MEMORANDUM OF POINTS AND AUTHORITIES**, with the Clerk of the Court by using the CM/ECF system and that the foregoing document is being served on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF:

Enoch H. Liang
James M. Lee
**Lee Tran & Liang APLC**
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017

Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences
Phone:  213-612-3737
Fax:  213-612-3773
E-mail: jml@ltlcounsel.com;
ehl@ltlcounsel.com

Stuart Singer
David Nelson
**Boies, Schiller & Flexner LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

Phone:  954-356-0011
Fax:  954-356-0022
E-mail:  ssinger@bsfllp.com;
dnelson@bsfllp.com

David Michels, Esq.
David L. Zifkin, Esq.
**Boies, Schiller & Flexner LLP**
401 Wilshire Blvd., Suite 850
Santa Monica, CA  90401

Phone:  310-752-2400
Fax:  310-752-2490
Email:  dzifkin@bsfllp.com;
dmichaels@bsfllp.com

Robert M. Foote
Kathleen Chavez
Matthew Herman
**Foote, Mielke, Chavez & O'Neil LLC**
10 West State Street, Suite 200
Geneva, IL 60134

Phone:  630-232-6333
Fax:  630-845-8982
E-mail:  rmf@fmcolaw.com;
kchavez@fmcolaw.com;  and
mherman@fmcolaw.com

LAURA T. JUAREZ

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

CERTIFICATE OF SERVICE