**WRENN BENDER LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail: amckown@wrennbender.com
pzecchini@wrennbender.com
gtrimarche@wrennbender.com

Attorneys for Defendant
GODADDY.COM, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; GODADDY.COM, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. CV13-08458-ABC (CW)<br><br>Assigned to Hon. Audrey B. Collins<br>Courtroom 680<br><br>**AFFIDAVIT OF NIMA KELLY IN SUPPORT OF MOTION TO RECUSE THE HON. AUDREY B. COLLINS**<br><br>[28 U.S.C. Sections 144 and 455]<br><br>Complaint Filed:   November 15, 2013<br>Trial Date:              Not Set<br><br>Date: February 3, 2014<br>Time: 9:00 a.m.<br>Dept.: To Be Determined |

1

I, Nima Kelly, declare:

1. I am General Counsel for Defendant GoDaddy.com, LLC ("GoDaddy"). GoDaddy.com, Inc. does not exist as a legal entity and thus, should not be a defendant in this action. I make this declaration based on my own personal knowledge and would testify to the same if required to do so in a court of law.

2. This case is the second of two lawsuits filed by the Academy of Motion Pictures Arts and Sciences ("AMPAS") against GoDaddy. The first was filed in 2010, captioned *Academy of Motion Pictures Arts and Sciences v. GoDaddy.com, Inc.*, Civ. Case No. CV10-3738-ABC (CW) (*AMPAS I*). AMPAS filed this action after the Hon. Audrey B. Collins dismissed a set of domain names that were not timely disclosed in *AMPAS I* and after she encouraged AMPAS to file the second lawsuit both in her June 21, 2013 order and at the June 24, 2013 Status Conference.

3. GoDaddy brings this motion to recuse Judge Collins in this case on the grounds that the totality of the circumstances demonstrates a clear appearance of partiality in favor of AMPAS. These circumstances include: (1) Judge Collins' acceptance of two dozen unrelated AMPAS cases over the past fifteen years in contravention of the Court's General Orders; (2) Judge Collins' abuse of her discretion, and her deviation from her own prior rulings and the Federal Rules of Civil Procedure, by denying GoDaddy's Rule 37 motion to exclude Joe Presbrey in order to salvage AMPAS' claims from dismissal in *AMPAS I*; (3) Judge Collins' extrajudicial statements in *AMPAS I* on June 24, 2013, which not only telegraphed her predetermined outcome of both that and this case, but were made to coerce GoDaddy into settlement over its objection, and (4) the statements by AMPAS' counsel that Judge Collins is "the Academy's Judge."

**I.   Judge Collins Abused Her Discretion In Denying GoDaddy's Motion to Exclude Joe Presbrey In Order To Salvage AMPAS' Claims In *AMPAS I***

4. In October 2009, AMPAS' counsel retained a "non-testifying litigation

1 consultant" by the name of Joe Presbrey to identify domain names containing AMPAS' marks within domain name strings resolving from GoDaddy's parked page servers. Eight months later, AMPAS filed the *AMPAS I* case based entirely on the domain names discovered by this "consultant." Despite being the only fact witness with knowledge regarding the discovery of these domain names and the creation of purported screenshots related thereto, AMPAS refused to identify this witness in its Initial Disclosures or at any other time during the course of discovery. Indeed, AMPAS refused to disclose even the existence of this witness for years.

5. In *AMPAS I*, GoDaddy propounded its first Request for Production of Documents ("First RFPs") on March 10, 2011 and its second Request for Production of Documents ("Second RFPs") on November 22, 2011. These requests sought documents related to (a) how and when AMPAS first discovered each of the domain names at issue; (b) any investigations conducted by AMPAS concerning its claims; and (c) AMPAS' trademark policing efforts, including processes and vendors used.

6. For nine months, the parties met and conferred over AMPAS responses, particularly AMPAS' failure to provide basic information regarding how, when, and by whom the domain names were discovered, as well as the origins of the screenshots produced. During that same time, AMPAS produced three separate privilege logs identifying a total of 661 documents, <u>none</u> of which disclosed either the existence of a litigation consultant or any privileged documents generated by him. When GoDaddy threatened to file a motion to compel to this information, AMPAS initially claimed that its counsel had used a computer software program to discover the domain names – a statement that AMPAS knew was false at the time it was made. Only after additional inquisition by GoDaddy did AMPAS finally admit on December 5, 2011 that it had retained a "non-testifying litigation consultant" who was responsible for developing automated software programs that discovered all of the domain names and purportedly captured each of the screenshots at issue.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

7. Nonetheless, AMPAS refused not only to disclose the identity of this fact witness (as Judge Collins later confirmed him to be in her July 12, 2013 minute order in *AMPAS I*), but it also refused to produce any data generated by the software programs this individual employed. As a result, in March 2012, GoDaddy filed a motion to compel the production of such data and, at the hearing, requested this individual's identity to allow for discovery into basic information about the identification of the domain names and the origins of the screenshots at issue.

8. In opposing GoDaddy's motion, AMPAS claimed that "the documents created by the Academy's . . . litigation consultant are not, as GoDaddy claims, 'factual in nature and simply tend[] to show the time and manner in which the parked pages that allegedly support AMPAS' ACPA claims were discovered.'" This representation to the Court was patently false. Contrary to AMPAS' initial contention, the data that resides on the computers and servers used by Presbrey contains factual information critical to resolving substantial discrepancies as to when and how often Presbrey's automated software program visited a domain name at issue in both this and the *AMPAS I* case.

9. At the April 10, 2012 hearing, Magistrate Judge Woehrle ultimately upheld AMPAS' assertion of the attorney-client privilege and work product doctrine to shield discovery into this fact witness and his related data. In so ruling, however, she admonished AMPAS:

> At this point, I'm certainly not going to order disclosure of the consultant's name, but, you know, at some point . . . Somebody's going to have to testify what these pages looked like when they went there and you may want to just make up your mind about that sooner rather than later.

10. Rather than heed Judge Woehrle's warning, AMPAS continued to shield both the identity of the witness and all data created by him in searching for, locating, and capturing screenshots of the domain names at issue through both fact

1 and expert discovery in *AMPAS I*.

2     11.    Fact discovery in *AMPAS I* closed in September 2012. Expert discovery in *AMPAS I* closed on March 4, 2013. AMPAS did not designate or otherwise disclose its "litigation consultant" as an expert in that case. As a result of AMPAS' decision to shield the "litigation consultant" from discovery through the assertion of privilege, GoDaddy moved for summary judgment on the grounds that AMPAS could not authenticate the screenshots upon which it sought to rely in proving its claims and thus, had no admissible evidence that the domain names at issue ever participated in the programs in dispute.

    12.    In opposition to GoDaddy's motion for summary judgment, and nearly four years after hiring and utilizing the litigation consultant to discover facts in support of its claims, AMPAS submitted a declaration signed by its litigation consultant in a belated attempt to authenticate the screenshots. In response, GoDaddy (a) filed evidentiary objections to the declaration supporting AMPAS' opposition to GoDaddy's summary judgment motion and (b) filed a motion to exclude all testimony of the litigation consultant pursuant to Rule 37 of the Federal Rules of Civil Procedure.

    13.    After the motions for summary judgment and motions to exclude certain witnesses were fully briefed, Judge Collins entered an order *sua sponte* vacating the trial and all related dates. She also continued the hearing date to June 24, 2013.

    14.    On June 21, 2013, Judge Collins issued a series of orders in *AMPAS I*, including an order granting AMPAS' motion to exclude two of GoDaddy's experts while concurrently denying GoDaddy's motion to exclude AMPAS' untimely disclosed witness despite recognizing that (i) the consultant was a fact witness, (ii) AMPAS had an affirmative obligation to disclose this witness three years prior as part of its initial disclosures, and (iii) that AMPAS violated its obligations under

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1 Rule 26.

2     15. In denying GoDaddy's Rule 37 motion, Judge Collins acknowledged that FRCP 37 "gives teeth" to FRCP 26 "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Moreover, she admitted that AMPAS' "decision not to disclose Presbrey . . . was ill-advised" and that "the Academy could have avoided this whole problem by timely disclosing Presbrey." Yet, Judge Collins issued a wholesale denial of GoDaddy's Rule 37 motion. In fact, despite the mandatory sanctions required by Rule 37 against a party who knowingly fails to disclose a witness, Judge Collins failed to issue a single sanction against AMPAS. To the contrary, Judge Collins effectively penalized GoDaddy by ordering limited discovery of Presbrey in order to allow AMPAS the opportunity to secure the evidence it needed to salvage its claims. True and correct copies of Judge Collins' June 21, 2013 order and her July 12, 2013 minute order clarifying her June 21, 2013 ruling are attached hereto as **Exhibit A**.

    16. In addition to denying GoDaddy's motion, Judge Collins notified the parties that she would not hear oral argument on the various summary judgment and expert disqualification motions set for hearing on June 24, 2013, but instead, ordered the parties to meet and confer on various issues, including settlement and AMPAS' filing of a second lawsuit, and then appear for a Status Conference on June 24, 2013.

**II. Extrajudicial Statements At June 24, 2013 Status Conference Begin To Reveal Judge Collins' Bias In Favor Of AMPAS**

    17. On June 24, 2013, the parties attended the Status Conference in *AMPAS I* as ordered by Judge Collins. Judge Collins began by warning GoDaddy of her inclination to adjudicate issues and claims in this action in a manner benefitting AMPAS:

> I put settlement in there because it does seem to me that somewhere

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

around here it might be good **now that you [found] out how things are going** to discuss settlement or to have your settlement conference whether you do that now or after discovery of Mr. Presbrey, whatever. **But it's certainly, time to start thinking about that because I think you can see the outlines of the way it's going**.

These statements were made directly to GoDaddy's counsel, Aaron McKown.

18. In response, Mr. McKown attempted to explain to Judge Collins that additional mediation would be a waste of the parties' and the Court's time, given past experiences and the recent rulings by the Court. Mr. McKown explained that he would discuss the possibility of future mediation with GoDaddy, but that his sense was that additional mediation would not be useful, and that GoDaddy would likely not be inclined to engage in further settlement discussions.

19. Judge Collins, in response, stated: "[Y]ou can make it clear to your client that you're going to go to another settlement conference before I would let this case go to trial. . . . [T]here will be another settlement attempt before this case goes to trial." Judge Collins then further stated: "I'm telling you you will go to settlement before this case ever goes back to trial. That's for sure, you'll go back." In order to justify her coercive demands that GoDaddy attend a further court-ordered mediation, Judge Collins stated that the parties' participation in a previously court-ordered mediation occurred too early in the case: "I mean I understand you did something early. That's fine; but, obviously, there will be another -- there will be another settlement attempt before this case goes to trial." The parties, however, had just attended a court-ordered mediation three months earlier—during the pendency of the summary judgment motions—and were vastly apart with respect to settlement. A true and correct copy of the transcript from the June 24, 2014 Status Conference is attached hereto as **Exhibit B**.

### III. AMPAS Repeatedly Flaunts That Judge Collins Is "the Academy's Judge" and Has Been For Fifteen Years

20. On August 27, 2012, I personally attended an informal meeting among

7

1  counsel in this action. The meeting took place at the offices of Quinn Emanuel
2  Urquhart & Sullivan LLP ("Quinn Emanuel") in Los Angeles, California. I was
3  joined by Aaron McKown of Wrenn Bender McKown & Ring LLLP on behalf of
4  GoDaddy. The Academy of Motion Pictures Arts and Sciences ("AMPAS") was
5  represented by David Quinto of Quinn Emanuel; Bob Foote of Foote Milke Chavez
6  & O'Neill LLP; Stuart Singer of Bois, Schiller & Flexner LLP; and Scott Miller, in-
7  house counsel for AMPAS.

8    21. While Quinn Emanuel is not counsel of record for AMPAS in this
9  action, David Quinto has been consistently involved in the *AMPAS I* litigation,
10 including as a participant in all settlement discussions. As Mr. Quinto explained
11 during his deposition in *AMPAS I*, he formulated the initial claims, aided AMPAS in
12 securing counsel of record due to a conflict of interest presented by Quinn
13 Emanuel's representation of Google, and joined in strategy discussions with
14 AMPAS' counsel throughout the pendency of that proceeding. Mr. Quinto also
15 attended hearings before Judge Collins—though there was no apparent reason for
16 his presence—and participated in discussions regarding the potential resolution of
17 all claims between AMPAS and GoDaddy.

18   22. After initial pleasantries were exchanged at the August 27, 2012
19 meeting, GoDaddy explained the parameters of a potential settlement, albeit a non-
20 monetary one. Mr. Quinto responded by stating that AMPAS has a long history
21 with Judge Collins and that we should know "she is the Academy's judge." Mr.
22 Singer then stated that while they were encouraged with the non-monetary terms
23 offered by GoDaddy, any settlement would require a substantial monetary payment.
24 Mr. Singer then proposed an eight-figure number to resolve all disputes between the
25 parties. The presentations by Mr. Quinto and Mr. Singer clearly implied that either
26 GoDaddy could reach an agreement with AMPAS at that time or Judge Collins
27 would award a substantially higher judgment later. While I was taken aback by the
28

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1 brashness of Mr. Quinto's asserted relationship with Judge Collins, I assumed at the
2 time that the comment was merely a form of ill-advised posturing. It was not until
3 after a series of events over the following year, coupled with subsequent
4 investigation undertaken at my direction, that it became apparent how truthful Mr.
5 Quinto's statement appears to be.

6       23. Pursuant to Judge Collins' October 5, 2010 Scheduling Order, the
7 parties participated in a formal mediation with the Hon. Stephen E. Haberfeld (Ret.)
8 on March 18, 2013. Although the parties were separated for the majority of the
9 mediation, at one point, AMPAS requested that it be permitted to make a
10 presentation to Aaron McKown and me. In the spirit of good faith, I agreed to listen
11 to AMPAS' presentation, which included AMPAS' continued leverage of its long-
12 standing history with Judge Collins and the repeated favorable rulings received by
13 her in the case, as was to be expected from "the Academy's judge." Despite the best
14 efforts of Judge Haberfeld, the parties were vastly separated in their settlement
15 terms.

16       24. As a result of the direct instructions by Judge Collins at the June 24,
17 2013 Status Conference mandating further settlement discussions between the
18 parties, Stuart Singer sent Aaron McKown a settlement demand letter on July 19,
19 2013 reiterating AMPAS' prior eight-figure settlement demand. The letter
20 repeatedly referred to anticipated actions and rulings by Judge Collins as
21 justification for its demand. A true and correct copy of this letter is attached hereto
22 as **Exhibit C**.

23       25. On September 6, 2013, Aaron McKown sent Stuart Singer an email
24 informing him that GoDaddy's Executive Committee would be discussing the
25 substance of Mr. Singer's letter "at the end of the month." A true and correct copy
26 of this email is attached hereto as **Exhibit D**.

27       26. On September 17, 2013, in advance of GoDaddy's meeting, Steve
28

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Madison, a partner at Quinn Emanuel, sent an email to Bill Sonnenborn, a senior advisor for KKR & Co., L.P. ("KKR"), which holds a seat on GoDaddy's Executive Committee. Mr. Madison's letter encouraged GoDaddy to settle the case. Specifically, Mr. Madison explained that Judge Collins "has handled all [of] the Academy's federal litigation for more than 15 years. She ruled in The Academy's favor on most issues but damages and fees have yet to be determined." A true and correct copy of Mr. Madison's email is attached hereto as **Exhibit E**. Neither Mr. Madison nor any other person affiliated with AMPAS sought permission to speak to Mr. Sonnenborn prior to his email as required by the California Rules of Professional Conduct.

**IV. AMPAS' Statements Trigger An Investigation By GoDaddy Which Shockingly Reveals AMPAS' Fifteen Year History Of Having Its Trademark Cases Improperly Reassigned To Judge Collins With Her Assistance**

27. The improper contact by Mr. Madison was eerily similar in tone to the August 2012 meeting with Mr. Quinto and the mediation in March 2013, including Mr. Quinto's statement that Judge Collins "is the Academy's judge." Indeed, Mr. Madison confirmed that Judge Collins has handled AMPAS' affirmative litigation in the Central District almost exclusively for more than 15 years. As a result of Mr. Madison's email, coupled with the Court's statement at the June 24, 2013 Status Conference, her rulings on June 21, 2013, and the prior statements by Mr. Quinto, I authorized GoDaddy's counsel to investigate the historical relationship between Judge Collins and AMPAS. GoDaddy's counsel concluded its investigation in late November 2013. Based on what counsel discovered, in combination with Judge Collins' statements at the June 24, 2013 Status Conference and Quinn Emanuel's repeated representation that Judge Collins "is the Academy's judge," and the Second Circuit's decision issued on November 13, 2013 recusing a judge for similar statements (*In re: Reassignment of Cases*, 736 F.3d 118 (2d. Cir. 2013)),

GoDaddy's Executive Committee authorized the filing of this motion on December 6, 2013.

28. GoDaddy's investigation revealed that AMPAS has a long history of litigation in the Central District. AMPAS was first randomly assigned to Judge Collins in a trademark case it filed on May 4, 1999, captioned *AMPAS v. Harwood*.[1] The *Harwood* matter closed on November 29, 1999 after the defendants entered into a stipulated judgment on the merits and Judge Collins issued a permanent injunction in favor of AMPAS.

29. AMPAS next filed a trademark suit in the Central District on August 27, 2001 in a matter captioned *AMPAS v. Butterfields Auction*. AMPAS filed a Notice of Related Case in the *Butterfields Auction* matter claiming that it related to the *Harwood* case previously assigned to Judge Collins. Despite General Order 224's prohibition on the relation of cases to previous matters that had been closed at least one year after a determination on the merits, the case was improperly deemed related and accepted by Judge Collins for reassignment.

30. Over the course of the next 13 years, AMPAS filed similarly defective related case notifications in twenty-seven (27) consecutive trademark cases it filed (not including this case). In each case, Judge Collins was not the originally assigned judge. Indeed, in several cases, not only was Judge Collins not initially assigned the case, she was also not the second judge assigned (i.e., a few of the AMPAS-Collins cases went back to the clerk for random reassignment, were reassigned to other judges, and then still ended up being transferred to her). Nonetheless, in all but two cases, Judge Collins accepted the cases for reassignment pursuant to AMPAS' filing of a Notice of Related Case. The only two exceptions involved a case in which Judge Collins' family member was an employee of the defendant and one in which

---

[1] Judge Collins has been on the bench in the Central District since 1994. From 1994 through May 1999, AMPAS did not have a case assigned to Judge Collins.

11

she had a financial interest in the defendant; both instances in which Judge Collins' had a clear and obvious conflict of interest. A summary of the AMPAS-Collins cases with the exception of this one is set forth in a chart attached hereto as **Exhibit F**.

31. Although Judge Collins accepted both the *Butterfield Auctions* case and twenty-five (25) of the next twenty-six (26) cases for reassignment, one of the cases she accepted was denied reassignment because the originally assigned judges (Judge Otero) found that none of the criteria required to relate a case under the Court's General Orders applied. The other case was dismissed before a ruling on the Notice of Related Case was issued.

32. Like the two cases that were denied reassignment by Judge Otero and Judge Real, not a single one of the other twenty-four (24) cases reassigned to Judge Collins met the requirements necessary to be deemed related under any of the applicable General Orders of this Court. For example, AMPAS filed twenty (20) of the twenty-four (24) reassigned cases between August 27, 2001, when it filed the *Butterfield Auctions* case, and February 2007. During that period, General Order 224 was in effect and precluded the relation of any case filed more than a year after a determination had been made on the merits. Yet in each of the twenty (20) cases, AMPAS filed a Notice of Related Case claiming that the new case related to the *Harwood* case even though each case was filed well after the one year anniversary of the closure date (November 29, 1999) for *Harwood*. As such, not one of these twenty (20) lawsuits met the requirements for reassignment to Judge Collins.

33. The same is true with respect to the three cases AMPAS filed between May 2007 and September 2007. In March 2007, the Court adopted General Order 07-02, which superseded General Order 224. General Order 07-02 further restricted the circumstances under which a case could be deemed related to a previously-filed matter. Specifically, a case could not be deemed related simply because it involved

1  the same trademark (assuming the timing requirements were otherwise satisfied).
2  Instead, even if the cases involve the same trademark, they could only be deemed
3  related if they (a) arose from the same or similar transaction, (b) called for a
4  determination of the same or substantially similar questions of law *and* fact, or (c)
5  for other reasons would entail substantial duplication of labor if heard by different
6  judges. Despite not meeting any of these requirements, AMPAS filed a Notice of
7  Related Case in all three cases that were filed while General Order 07-02 was in
8  effect, incredibly claiming that each matter related back to the 1999 *Harwood* case.
9  As a result, each of these three cases was subsequently reassigned to Judge Collins.

10        34. AMPAS filed the *AMPAS I* action in May 2010. At that time, the
11  Court had adopted General Order 08-05, which superseded General Order 07-02 and
12  its successor, General Order 08-01. Regardless, Paragraph 5.1.1 of General Order
13  08-05 maintains the same requirements for relating a case as General Order 07-02:
14  (a) the matter must arise from the same or similar transaction as the prior case, (b)
15  the matter must call for a determination of the same or substantially similar
16  questions of law *and* fact as the prior case, or (c) for other reasons, the matter would
17  entail substantial duplication of labor if heard by different judges. The fact that the
18  cases involve the same trademark(s) is insufficient to relate the cases or to reassign
19  the matter to the prior judge absent one of the other criteria being met. Again,
20  despite not meeting any of the requisite criteria, AMPAS filed a Notice of Related
21  Case claiming that this case related to sixteen cases previously filed between 1999
22  and 2007, all of which were allegedly related to the *Harwood* case. As with the
23  other twenty-six (26) cases, Judge Collins improperly accepted this case for
24  reassignment.

25        35. David Quinto and Quinn Emanuel were the attorneys of record (or at
26  least one of the attorneys of record) in all but two of the AMPAS-Collins cases.
27  One of the two exceptions is this action, where Quinn Emanuel is not the attorney of
28

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

record due a conflict of interest with regard to Quinn Emanuel's ongoing representation of Google. Nonetheless, Quinn Emanuel, and in particular, Mr. Quinto, has been extensively involved in the case.

36. In addition to the discovery of Judge Collins' pattern of favorable decisions for AMPAS, we also discovered that Judge Collins' daughter is an actress who appears on several pages of AMPAS' website. True and correct copies of screenshots from AMPAS' website referencing Judge Collins' daughter are attached hereto as **Exhibit G**.

37. On December 12, 2013, AMPAS' counsel notified counsel for GoDaddy that they believe Judge Collins, not a jury, will serve as the fact-finder with regard to whether GoDaddy acted in bad faith. A true and correct copy of the email containing this statement is attached hereto as **Exhibit H**. AMPAS' counsel previously advised counsel for GoDaddy that they believe Judge Collins is also the one who will determine the amount of statutory damages in the event GoDaddy is found liable under the ACPA.

38. GoDaddy does not take the filing of this Motion lightly. GoDaddy has never previously filed a motion to recuse a federal judge. While I anticipate that AMPAS will claim that this motion is being filed for strategic purposes, I can assure the Court that it is not. This Motion is made because the totality of the circumstances demonstrates a bias, or at least an appearance of bias, by Judge Collins in favor of AMPAS such that a reasonable person with knowledge of all the facts would believe that her impartiality might be questioned.

I declare under penalty of perjury under the laws of the United States of

/ / / /

/ / / /

/ / / /

/ / / /

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

America that the facts set forth above are true and correct. Executed this 31st day of December, 2013, at Scottsdale, Arizona.

_____
Nima Kelly

State of Arizona )
County of Maricopa )

The foregoing instrument was acknowledged, subscribed and sworn before me this 31 of December, 2013 by Nima J. Kelly.

NOTARY SEAL                              _____
                                          NOTARY PUBLIC

Ashley Noelle Hammons
Notary Public
Maricopa County
State of Arizona
My Comm. Exp. 9-30-2017

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

15

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

# CERTIFICATE OF SERVICE

Pursuant to L.R. 5-3, I hereby certify that on January 6, 2014, I electronically filed the foregoing document, **AFFIDAVIT OF NIMA KELLY IN SUPPORT OF MOTION TO RECUSE THE HON. AUDREN B. COLLINS,** with the Clerk of the Court by using the CM/ECF system and that the foregoing document is being served on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Enoch H. Liang<br>James M. Lee<br>**Lee Tran & Liang APLC**<br>601 South Figueroa Street, Suite 4025<br>Los Angeles, CA 90017 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 213-612-3737<br>Fax: 213-612-3773<br>E-mail: jml@ltlcounsel.com;<br>ehl@ltlcounsel.com |
| Stuart Singer<br>David Nelson<br>**Boies, Schiller & Flexner LLP**<br>401 East Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301 | Phone: 954-356-0011<br>Fax: 954-356-0022<br>E-mail: ssinger@bsfllp.com;<br>dnelson@bsfllp.com |
| David Michels, Esq.<br>David L. Zifkin, Esq.<br>**Boies, Schiller & Flexner LLP**<br>401 Wilshire Blvd., Suite 850<br>Santa Monica, CA 90401 | Phone: 310-752-2400<br>Fax: 310-752-2490<br>Email: dzifkin@bsfllp.com;<br>dmichaels@bsfllp.com |
| Robert M. Foote<br>Kathleen Chavez<br>Matthew Herman<br>**Foote, Mielke, Chavez & O'Neil LLC**<br>10 West State Street, Suite 200<br>Geneva, IL 60134 | Phone: 630-232-6333<br>Fax: 630-845-8982<br>E-mail: rmf@fmcolaw.com;<br>kchavez@fmcolaw.com; and<br>mherman@fmcolaw.com |

_____
LAURA T. JUAREZ

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614