BOIES, SCHILLER & FLEXNER LLP
Stuart Singer (*pro hac vice*)
401 East Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
Tel: 954-356-0011
Fax: 954-356-0022
Email: ssinger@bsfllp.com

FOOTE MIELKE CHAVEZ & O'NEIL, LLC
Robert M. Foote (*pro hac vice*)
Kathleen Chavez (*pro hac vice*)
Matthew Herman (*pro hac vice*)
10 West State Street, Suite 200
Geneva, IL 60134
Tel: 630-232-7450
Fax: 630-232-7452
Email: rmf@fmcolaw.com; kcc@fmcolaw.com; mjh@fmcolaw.com

LEE, TRAN LIANG & WANG LLP
James M. Lee (CA Bar No. 192301)
Enoch H. Liang (CA Bar No. 212324)
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017
Tel: 213-612-8900
Fax: 213-612-3773
Email: james.lee@ltlw.com; enoch.liang@ltlw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>GODADDY.COM, INC., a Delaware corporation, and GODADDY.COM, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No: CV-13-08458-ABC (CWx)<br><br>**PLAINTIFF'S OPPOSITION TO GODADDY'S MOTION TO RECUSE THE HON. AUDREY B. COLLINS**<br><br>[Declarations of David Quinto, Stuart Singer, Enoch Liang, and Dave Hanson filed concurrently]<br><br>**Date:** February 3, 2014<br>**Time:** 1:30 p.m.<br>**Dept:** 740<br>**Judge:** Hon. Dale Fischer |

# **TABLE OF CONTENTS**

**Page**

KEY TO ABBREVIATIONS..................................................................................iv

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF FACTS.......................................................................3

        A.      The Instant Litigation Was Filed in May 2010 with a Proper
                Notice of Related Case.................................................................3

        B.      GoDaddy's Motions to Dismiss Were Denied in 2010 .........................4

        C.      Judge Collins's Statements at the June 24, 2013 Hearing ....................5

        D.      The Ruling on Presbrey Was Based in Part on GoDaddy's
                Actions ........................................................................................8

        E.      The Granting of Partial Summary Judgment on Confusing
                Similarity in November 2013.......................................................9

        F.      The Parties' Settlement and Mediation Discussions............................ 10

        G.      The Academy's database listing of Judge Collins' Daughter............... 11

III.    LEGAL STANDARDS ........................................................................ 12

IV.     ARGUMENT ...................................................................................... 14

        A.      Cases Involving the Academy's Trademarks, Including this One,
                Were Properly Found Related by the Numerous Judges Who
                Agreed to their Transfer......................................................... 14

                1.      Relevant Legal Standards for Filing a Notice of Related
                        Case...................................................................... 15

                2.      The Academy Properly Filed a Notice of Related Case............. 16

        B.      The June 2013 Rulings and Hearing Do Not Show Any Bias.............. 17

        C.      GoDaddy's Allegations of Judicial Bias Are Unsupported ................. 20

        D.      The Inclusion of Judge Collins' Daughter in the Academy's
                MPC Online Public Database Is Not a Basis to Disqualify................. 22

        E.      GoDaddy's Motion Is Untimely ......................................... 23

V.      CONCLUSION ................................................................................ 25

1
## TABLE OF AUTHORITIES

2
**Page**

3
## Cases

4
*Accentra Inc. v. Staples, Inc.*,
  2010 WL 8450890 (C.D. Cal. Sept. 22, 2010)......................................18

5

*Berger v. United States*,
6
  255 U.S. 22 (1921) ........................................................................13, 20

7
*Matter of Beverly Hills Bancorp*,
  752 F.2d 1334 (9th Cir. 1984) ...............................................................12

8
*Botts v. U.S.*,
9
  413 F.2d 41 (9th Cir. 1969) ...................................................................13

10
*Datagate Inc. v. Hewlett Packard Co.*,
  941 F.2d 864 (9th Cir. 1991) .................................................................22

11

12
*FSLIC v. Dixon*,
  835 F.2d 554 (5th Cir. 1987) .................................................................20

13
*First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*,
  210 F.3d 983 (9th Cir. 2000) .................................................................23

14
*Folb v. Motion Picture Industry Pension & Health Plans*,
15
  16 F. Supp. 2d 1164 (9th Cir. 1998).......................................................21

16
*In re Fox West Coast Theatres*,
  88 F.2d 212 (9th Cir. 1937) ...................................................................22

17
*Hoffman v. Caterpillar, Inc.*,
18
  368 F.3d 709 (7th Cir. 2004) .................................................................13

19
*Hoffman v. Constr. Protective Servs.*,
  541 F.3d 1175 (9th Cir. 2008)...........................................................17, 18

20
*King v. U.S. Dist. Court*,
21
  16 F.3d 992 (9th Cir. 1994) ...................................................................13

22
*Litekey v. U.S.*,
  510 U.S. 540 (1994) ...............................................................13, 14, 17, 20

23
*Marks v. Askew*,
24
  2012 WL 70623 (N.D. Cal. Jan. 9. 2012) ..............................................13

25
*Milgard Tempering, Inc. v. Selas Corp. of America*,
  902 F.2d 703 (9th Cir. 1990) .................................................................12

26
*Partington v. Gedan*,
27
  880 F.2d 116 (9th Cir. 1989), *vacated on other grounds and remanded by*
  497 U.S. 1010, 11 S. Ct. 3265 ...............................................................12

28

*Preston v. U.S.*,
    923 F.2d 731 (9th Cir. 1991) .................................................................. 24

*In re: Reassignment of Cases*,
    736 F.3d 118 (2d. Cir. 2013) ................................................................. 19

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497, 121 S. Ct. 1021 (2001) .................................................. 16

*U.S. v. Haldeman*,
    559 F.2d 31 (D.C. Cir. 1976) ............................................................... 12

*United States v. Burger*,
    964 F.2d 1065 (10th Cir. 1992) ........................................................... 13

*United States v. Jacobs*,
    855 F.2d 652 (9th Cir. 1988) ............................................................... 20

*United States v. Kelley*,
    712 F.2d 884 (1st Cir. 1983) ............................................................... 23

*Vinotemp Int'l Corp. v. Wine Master Cellars, LLP*,
    2013 WL 5366405 (C.D. Cal. Feb. 5, 2013) ...................................... 18

## **Statutes**

28 U.S.C. § 144 ........................................................................... 12, 13

28 U.S.C. § 455 ................................................................................ 12

28 U.S.C. § 455(4) ........................................................................... 23

*Cal. Ev.* Code Sections 1115-1128 ................................................. 11

Fed. R. Civ. P. 16 ........................................................................... 20

Local Rule 16-2 ............................................................................... 18

Local Rule 83-1.3 ........................................................................... 15

Local Rule 83-1.3.1 ........................................................................ 15

Local Rule 83-1.3.2 ................................................................... 4, 14

OPPOSITION TO MOTION TO RECUSE JUDGE COLLINS

## **KEY TO ABBREVIATIONS**

The below is a reference guide to the abbreviations used in the Academy's motion.

- "Quinto Decl." refers to the concurrently filed declaration of David Quinto

- "Liang Decl." refers to the concurrently filed declaration of Enoch Liang

- "Singer Decl." refers to the concurrently filed declaration of Stuart Singer

- "Hanson Decl." refers to the concurrently filed declaration of Dave Hanson

- "6.24 Hrg Tr" refers to the June 24, 2013 reporter's transcript of the hearing before Judge Collins, which is attached as Exhibit A to the Liang Decl.

- "Dkt No." refers to the Docket Number on the PACER Docket for relevant proceedings in this matter.

## I.    __INTRODUCTION__

GoDaddy's over-long recusal motion is not just legally insufficient and untimely; the allegations are outrageous and sanctionable.  As set forth below:

__Related Case Rulings:__  GoDaddy omits that the decision to transfer a related case is first made by the transferor judge (not Judge Collins as the transferee judge). Nearly 20 judges have transferred cases involving the Academy's trademarks to Judge Collins; in fact, even before Judge Collins, Judge Waters heard related Academy cases, including 16 straight trademark/copyright cases from 1994 to 1998.  The Academy's filing of notice of related cases was proper (and indeed required) pursuant to General Orders and Local Rules.

No "investigation" was required to discover the past transfers.  Over 15 related cases were identified by the Academy in its initial Notice of Related Case filing, and were a matter of public record.  GoDaddy did not object to the transfer as provided for in Local Rules. Instead, it waited more than 3½ years to challenge the re-assignment, after having lost summary judgment rulings in the interim.

__Presbrey Evidentiary Ruling.__  Because the ruling was not extra-judicial, it is irrelevant to the motion.  Further, Judge Collins's decision *not* to exclude a document authentication witness was well within her discretion and justified.  Both Judge Collins and Magistrate Judge Woehrle found GoDaddy's statements to the Academy regarding its answers to requests for admissions regarding the authenticity of the screenshots were at least partly responsible for the Academy's delayed designation of Presbrey as a screenshot authentication witness.

__Judge Collins's June 24, 2013 Statements.__  Judge Collins properly noted that the parties' only mediation had occurred before her partial summary judgment ruling. Unsurprisingly, she stated that she would require an additional settlement process before trial.

GoDaddy's suggestion that Judge Collins advised the Academy to file a second lawsuit on domain names that she (ruling in favor of GoDaddy) held were not part of

the present lawsuit, is utterly misleading.  At the hearing, the Academy's counsel stated that the Academy would file a second action.  GoDaddy's counsel then *agreed*, on the record, that doing so would be procedurally correct.  Judge Collins simply noted the obvious fact that an identical lawsuit adding additional domain names would be transferred to her as a related case.

**GoDaddy's Assertions Regarding Settlement.**  GoDaddy's contentions regarding settlement are irrelevant to the issue of judicial bias and made in utter disregard for the confidentiality of settlement communications and mediation proceedings.

Although the Academy would like to settle this case, like any other litigation, it has not pressured GoDaddy to do so; nor could it given that GoDaddy is a major corporation with whom the Academy has no business relationship.  Instead, the Academy has merely pointed out that GoDaddy's legal positions are untenable and that Judge Collins has recognized this in denying GoDaddy's motions to dismiss and for summary judgment.

Mr. Quinto's singular reference in September 2012 to her as the "Academy judge" – not the "Academy**'s** judge" – was made in reference to her having had a number of Academy trademark cases before her.  Neither Mr. Quinto nor any other representative of the Academy ever expressed or implied that Judge Collins would always rule for the Academy—indeed, she has ruled against the Academy both in this and in prior cases—or that she is biased in favor of the Academy.  Even GoDaddy does not show otherwise.

**Judge Collins's Daughter.**  The suggestion that Judge Collins is biased because her daughter's name appears in the Academy's Motion Picture Credit database of *over 370,000 people* with verified film credits since 1952 would be laughable if not made in a context as serious as this.  GoDaddy does not even attempt to show that Judge Collins was aware of the database.  Nor is Judge Collins's daughter member of the Academy.

**GoDaddy's Motion Is Untimely.**  The Academy's Notice of Related Cases was a matter of public record for 3.5 years, the settlement meetings were in September 2012 and March 2013, the Presbrey ruling and Judge Collins's allegedly improper statements were made in June 2013—when GoDaddy's motion for summary judgment was denied and the Academy's partial summary judgment motion was granted in part.  GoDaddy brought no motion after any of these events.

GoDaddy also neglects to mention its participation in summary judgment proceedings *after* the June 24th hearing, leading to a November 4, 2013 ruling by Judge Collins that a significant number of domain names are confusingly similar to the Academy's marks as a matter of law (and that others are not).  Two months after this ruling—entirely proper but not disclosed by GoDaddy—this meritless and insulting motion to recuse has been filed.

It should be speedily and summarily denied.

## II.   STATEMENT OF FACTS

To correct GoDaddy's factual distortions, the Academy sets forth below the relevant factual and procedural background.

### A.   The Instant Litigation Was Filed in May 2010 with a Proper Notice of Related Case

The Academy filed suit against GoDaddy on May 18, 2010. [Dkt No. 1].  The action concerns GoDaddy's parked pages program, which places advertising on "parked pages" for Websites otherwise without content but whose domain names are confusingly similar to the Academy's OSCAR and ACADEMY AWARDS marks.  [*See, e.g.*, Liang Decl., Exh. C].  The Academy principally alleges violation of the Anticybersquatting Consumer Protection Act (the "ACPA").  [*Id.*]  When it filed its complaint, the Academy also filed a Notice of Related Cases, which listed over 15 cases involving the same Academy trademarks.  [Dkt No. 5].  The case was initially assigned to Judge Dale S. Fischer on May 24, 2010.  [Dkt No. 14].  Judge Fischer

1   transferred the matter to Judge Collins on May 26, 2010, who consented to the transfer.
2   [Dkt. No. 19].

3       The reasons indicated for the transfer were:  "[B] Call for determination of
4   the same or substantially related or similar questions of law and fact," and "[D] Involve
5   the same patent, trademark or copyright, and one of the factors identified above in a, b
6   or c also is present."  [*Id.*].  GoDaddy never exercised its right under Local Rule 83-
7   1.3.2 to oppose the transfer.

8       During the past 15 years, nearly 20 Central District judges have transferred
9   Academy trademark cases to Judge Collins.  These include:  Judge Pfaelzer, Judge
10  Matz, Judge Manella (twice), Judge Morrow, Judge Real (three times), Judge Baird,
11  Judge Rafeedie, Judge Snyder, Judge Hatter, Judge Anderson, Judge Wilson, Judge
12  Taylor, Judge Walter, Judge King, Judge Wilson, Judge Fischer (twice), Judge Cooper,
13  Judge Klausner, and Judge Phillips.  [*See* Kelly Decl., Ex. F (listing Judges who
14  transferred Academy matters to Judge Collins)].  Moreover, from 1987 until 1999
15  (when the first case was randomly assigned to Judge Collins), most (if not all) of the
16  Academy's trademark cases were related to and heard by Judge Laughlin E. Waters.
17  [Quinto Decl., ¶ 3].

18      These transfers, approved by numerous judges, were based upon the fact that
19  enforcement of the Academy's marks involves common factual and legal issues
20  regarding the strength of the marks, issues of confusing similarity and dilution, and the
21  importance of trademarks to the Academy's work.

22      **B.**    **GoDaddy's Motions to Dismiss Were Denied in 2010**

23      The substantive legal issues of the application of the ACPA to GoDaddy's
24  parked pages program largely were decided in 2010.  In mid-July 2010, GoDaddy
25  moved to dismiss the Academy's complaint.  [Dkt No. 35].  On September 20, 2010,
26  Judge Collins denied the substantive portions of GoDaddy's motion to dismiss as it
27  related to the ACPA claim, but dismissed other claims with leave to replead.  [Dkt No.

28

51].  On December 15, 2010, Judge Collins denied GoDaddy's motion to dismiss the First Amended Complaint.  [Dkt No. 68].

### C.   Judge Collins's Statements at the June 24, 2013 Hearing

Following the motions to dismiss, the parties engaged in substantial discovery. Judge Collins made no further substantive rulings until June 2013, after both parties filed extensive motions for partial summary judgment and to exclude certain experts and witnesses.  "In light of the volume of papers filed," on April 10, 2013, Judge Collins moved the hearing from the original April 22 date to June 24, 2013. [Dkt No. 440].

On June 21, 2013, Judge Collins ruled on the pending substantive motions.  The Academy largely won, but not entirely so:  Judge Collins excluded from the suit names not designated by September 14, 2011 and found that whether the Academy's marks were famous presented a triable issue.  [Dkt No. 491, at 28-29].  She also denied GoDaddy's motion for partial summary judgment, which largely repeated arguments GoDaddy earlier made in moving to dismiss.  [*Compare* Dkt No. 51, at 6-12 *to* Dkt No. 491, at 11-16].

Judge Collins retained the scheduled June 24 hearing for a status conference, inviting the parties to meet and confer on a number of issues in advance.  [Dkt No. 493] GoDaddy refused to confer with the Academy.  [Liang Decl., ¶3, Exh. B].  The parties then attended the June 24 status conference.

### Judge Collins Did Not Encourage the Academy to File a Second Lawsuit.

GoDaddy's claims that Judge Collins encouraged the Academy to file a second lawsuit [Mot., at 23-24] is demonstrably false.  Remarkably, it arises from a ruling *in favor of GoDaddy*.

Because GoDaddy's Parked Pages Program adds domain names as they are registered by third party registrants—including domain names incorporating the Academy's trademarks—Judge Collins ordered the Academy to identify all infringing domain names 60 days before the initial fact discovery cut-off.  [Dkt No. 491, at 8-9].

The parties later extended the fact discovery deadline several times, leaving it unclear whether the cut-off to identify domain names was also extended. [*Id*.]. On June 21, 2013, Judge Collins ruled *against* the Academy and *for GoDaddy*, finding that the last date to disclose additional domains was September 14, 2011. [*Id.*] She then ordered the parties to meet and confer on, among other things, "how the parties intend to handle the domain names that the Academy disclosed after September 14, 2011." [Dkt No. 493].

The transcript of the June 24, 2013 Status Conference reflects that Judge Collins said nothing encouraging or advising the Academy to file a second lawsuit. At the June 24 hearing, ***the Academy's counsel spoke first and raised this issue***:

> [MR. SINGER (Academy's lead counsel)]: With respect to the names that are not disclosed by September 14th, 2011 . . . we would first seek to resolve this case by settlement, and only if that is not possible, then looking at filing an additional case, which may be stayed or which may be consolidated. We, certainly, don't want to delay this trial any further, but we aren't prepared to have those names just go by the wayside. *So we would file something if the case couldn't be resolved that presumably would be transferred to this division and could be held pending the result of the case or consolidated in whatever way makes the most sense*." [6.24 Hrg Tr., at 6:2-7:2 (italics added).]

GoDaddy's counsel then stated, in a passage also not disclosed to this Court in its disqualification motion, that it *agreed with* that procedure:

> I'll start by saying ***we agree*** that the untimely disclosed domain names should be part of a separate action and shouldn't be part of this lawsuit. So we would agree with the Academy on that point." [*Id.* at 8:10-13 (emphasis added)].

Only then did Judge Collins state the obvious proposition that a completely identical case, with just an additional set of domain names, would be related and transferred to her:

> But, of course, it is true I will get the case under the local rules and presuming – as I'm sure I can safely presume that this case is not going to trial, it will be consolidated. [6.24 Hrg Tr., Exh. B at 8:15-18.]

For GoDaddy to twist this record and claim that "Judge Collins blatantly advised AMPAS how to get around her prior order . . . . by simply filing another lawsuit" is so false as to be sanctionable. [Mot., at 23:19-21].

**GoDaddy's Assertion that Judge Collins Attempted to Coerce GoDaddy into Settling is Also False.**  Settlement was one of the pretrial issues that Judge Collins, like jurists everywhere, asked the parties to report on at the status conference.  [Dkt No. 493].

The Academy's counsel addressed the topic first, noting that the March 2013 mediation was unsuccessful, but that the Academy would attempt again to see if a settlement could be reached in view of the grant of partial summary judgment.  [6.24 Hrg Tr., at 25:23-26:10.]

GoDaddy's counsel then stated that the parties were, "probably going to be farther apart as a result of these, and as a result of the rulings, my client may not be in a position to consider settlement."  [*Id.*, 29:19-30:7].  However, he offered to "discuss that with our client . . ., perhaps, we could get closer.  So I think we'll leave that open."  [*Id.*]  Following that, Judge Collins stated:

> THE COURT: And you will – and you can make it clear to your client that you're going to go to another settlement conference before I would let this case go to trial.  I mean I understand you did something early.  That's fine; but, obviously, there will be another—there will be another settlement attempt before this case goes to trial.  [6.24 Hrg Tr., at 30:8-14]; [*see also id.*, at 36:6-13 (noting that the previous mediation was "way too early in the case to count as far as I'm concerned as satisfying your obligation.")].

Judge Collins' statement that the parties should think about settlement "because I think you can see the outlines of the way its' going" was not a prediction of future rulings, but a reference to the fact that she had just decided extensive summary judgment rulings (which was not the case at the earlier mediation).  [6.24 Hrg Tr., at 4:14-21].

Judge Collins went on to say she would not order such a settlement proceeding at the present time stating:  "it doesn't sound to me like you're ready to talk settlement.  So I'm ***not*** going to force that.  I'm telling you you will go to settlement before this case ever goes to trial."  [*Id.*, at 36:6-13 (emphasis added)].

### D.      The Ruling on Presbrey Was Based in Part on GoDaddy's Actions

The issue over Joe Presbrey concerned a document authentication witness.  The Academy's litigation consultant Presbrey will authenticate screenshots taken of GoDaddy's own hosted websites—the parked pages.  Exhibit C to the Liang Decl., ¶4, shows screenshots of a GoDaddy Parked Page.  GoDaddy refuses to admit that screenshots like these are authentic notwithstanding that the screenshots bear GoDaddy logos and include statements such as "This Web page is parked FREE, courtesy of GoDaddy.com" and "Copyright [year] GoDaddy.com Inc.  All rights reserved."  [*Id.*, Exh. C].  Every GoDaddy witness asked admitte at deposition that the screenshots they were shown were in fact a GoDaddy parked page.  [Liang Decl., ¶5, Exh., Exh. D, Dkt No. 418, at Undisputed Fact No. 91].  GoDaddy's characterization of Judge Collins's ruling on Presbrey as a "decision to resurrect AMPAS' claims from the brink of dismissal" is blatantly false.[1]  [Mot., at 19:11-13].

The record shows that Presbrey, who otherwise would not have remained a non-testifying consultant, was later designated as a witness because GoDaddy misled the Academy concerning whether it would stipulate to authenticity.[2]  Even Magistrate Judge Woerhle told GoDaddy to honor its previous statements:  "I think you should have to admit just like you indicated, you know, back in the correspondence that you would admit or deny that domain names were in the parked page program on a certain

---

[1]    Magistrate Judge Woerhle noted that the Academy would likely be able to establish at trial that the screenshots-at-issue are in fact GoDaddy's Parked Pages.  [Liang Decl. ¶6, Exh. E (4.30.2013 Hrg Tr., at 32:3-10].

[2]   Twice, GoDaddy told the Academy that it would (a) confirm or deny whether that domain name was in its Free or Cash parking program as of the date stated in each request; and (b) it would admit or deny "whether every one of the more than 250 domain names identified were within one of its parking programs on the dates and times [in the RFAs]."  [*See* Dkt No. 481, at 4].

On February 4, 2013, *after* fact and expert discovery had closed, GoDaddy reneged on its previous statements.  It refused to stipulate to answer the RFAs despite its previous statements.

date or – or you know, or not." [Liang Decl. ¶6, Exh. E (4.30.2013 Hrg Tr., at 19:9-12].

Judge Collins criticized the Academy for not designating Presbrey earlier but noted:

> However, the record also indicates that GoDaddy did promise the Academy, in response to the Academy's Requests for Admission, that it would admit or deny whether each domain name in issue was in the Parked Pages Program, but that GoDaddy did not timely honor this commitment. ***Thus, although the Academy itself is mostly to blame for its failure to disclose Presbrey, the Academy's conduct was at least somewhat induced by GoDaddy's promise to definitively answer the requests for admission***.

> The Court finds that re-opening discovery for the limited purpose of allowing the Academy to disclose Presbrey and GoDaddy to depose him is an appropriate resolution. ***As noted, although the Academy could have avoided this whole problem by timely disclosing Presbrey, that GoDaddy did not fully respond to Academy's RFAs is what rendered Presbrey's testimony somewhat unexpectedly relevant.*** As the parties are aware, the Court has vacated the trial date and has not reset it; the very earliest trial opening in the Court's calendar is late Spring 2014. As such, extending the discovery for this purpose will not delay trial. In addition, because GoDaddy will have the opportunity to depose Presbrey, it will suffer no prejudice. Thus, although the Court cannot conclude that the Academy's decision to not disclose Presbrey was substantially justified, the Court does conclude, for the foregoing reasons, that admitting Presbrey's testimony will not prejudice GoDaddy because GoDaddy will have an opportunity to depose him. [Dkt No. 492, at 12:10-13:13]

Thus, the sole substantive ruling which GoDaddy challenges as reflecting bias is a discretionary ruling not to exclude a document authentication witness where both the Magistrate Judge and Judge Collins found GoDaddy partially responsible for the Academy's late designation.

### E.    The Granting of Partial Summary Judgment on Confusing Similarity in November 2013

GoDaddy never discloses to this Court that after the June 24th hearing it participated, without objection, in an additional part of the summary judgment process over whether domain names were confusingly similar as a matter of law. On November 4, 2013, the Court issued its order. [Dkt No. 508]. Judge Collins found that approximately 147 domains were confusingly similar as a matter of law, approximately

47 domains were not confusingly similar as a matter of law, and that the remaining approximately 60 domains presented triable issues of fact.  [*Id*.]

GoDaddy never objected to this process; nor did GoDaddy ever assert that Judge Collins was biased or should be disqualified during the nearly 4-month period following the June 24 hearing while this was before the Court.

**F.      The Parties' Settlement and Mediation Discussions**

Because Judge Collins had previously referred the parties to private mediation [Dkt No. 55], the Academy and GoDaddy engaged in settlement talks over the normal course of the litigation.

**In August 2012**, after GoDaddy's Nima Kelly requested settlement talks, the Academy and GoDaddy met in Los Angeles at the offices of Quinn Emanuel—the Academy's outside general counsel since 1987 (but not litigation counsel here).  This was not an "initial meeting" of the parties in an action commenced two years earlier as GoDaddy characterizes it, but a settlement conference.  [Singer Decl. ¶ 2, Exh. A].  The parties expressly agreed that the discussion was subject to FRE 408.  [Singer Decl., ¶ 2; Quinto Decl., ¶ 9].

The Academy therefore objects to GoDaddy's improper disclosure and reliance on settlement- and mediation-privileged discussions in its motion.  (As argued below, they are also irrelevant in a motion that must establish judicial bias.)  [*See, e.g.*, Kelly Decl., at ¶ 22, Exhs. C, D, and E].  If the Court requests a further factual account of the conference and subsequent correspondence, the Academy will be happy to provide same for *in camera* review.  At this point, the Academy simply notes that it would like to settle, but it has not pressured GoDaddy to do so, nor could it given that GoDaddy is a major corporation with whom the Academy has no business relationship.  [Quinto Decl., ¶ 11].  All the Academy has done is point out that GoDaddy's legal positions are untenable and that Judge Collins is familiar with the Academy's business and trademarks, as well as on governing law, as reflected in her denial of GoDaddy's motions to dismiss and for summary judgment.  [Singer Decl. ¶ 3 and ¶ 5].

It is simply untrue that Mr. Quinto characterized Judge Collins as "the Academy**'s** judge." [*See* Nima Kelly Decl., ¶21].  Mr. Quinto referred to Judge Collins as "the Academy Judge." [*See* Quinto Decl., ¶¶ 6-8], explaining that Judge Collins had handled prior intellectual property cases involving the Academy, was familiar with the Academy's intellectual property, the Ninth Circuit's precedent bearing on that intellectual property, and the Academy's practice of resorting to litigation after all attempts to obtain relief amicably had failed.  [*See* Quinto Decl., ¶¶ 6-8].  Indeed, Judge Collins has *not* consistently ruled in favor of the Academy in the past—the Academy has never prevailed on summary judgment or at trial in any case assigned to Judge Collins.  [*Id.*]

**In March 2013**, the parties mediated this matter before Ret. Judge Haberfeld. Prior to the mediation, all counsel and all parties present signed the standard JAMS confidentiality form for mediations.  [Singer Decl., ¶4, Exh. B; Liang Decl., ¶8].[3] Although the agreement requires that proceedings be confidential—as do the local rules of this Court and the California mediation statute [*Cal. Ev.* Code Sections 1115-1128]—GoDaddy has violated these provisions by disclosing mediation statements.[4] Even so, GoDaddy cannot point to any statement at the mediation that Judge Collins was biased in the Academy's favor and no such statement was ever made or implied. [Singer Decl. ¶¶3, 5].

### G.    The Academy's database listing of Judge Collins' Daughter

GoDaddy speculates Judge Collins's purported bias might stem from her daughter's acting career and appearance "on multiple pages" of the Academy's website,

---

[3]   The Academy attempted to obtain the actual confidentiality form executed by all counsel and parties at the March 2013 mediation, but JAMS keeps those forms only for 90 days.  [Liang Decl., ¶8].

[4]   GoDaddy even discloses the Academy's initial monetary settlement demand.  The Academy will not, unless requested, go into the specifics of that demand or the parties' subsequent negotiations, but notes that given the availability of statutory damages of up to $100,000 per infringing domain name, simple math reflects that GoDaddy faces a potential eight-figure liability.  Interestingly, GoDaddy's own litigation counsel refers to this case as a $30 million case on her website.  [Liang Decl., ¶7, Exh. F].

thus implying that Rachel Montez Collins is somehow associated with the Academy. [Motion, 10:24-11:1]. In truth, the "multiple pages" are simply the Academy's "Index to Motion Picture Credits" database (the "MPC"). [*See* Kelly Decl., Exh. G]. Rachel Collins is named just *once* in the MPC. [*Id.*; see also Hanson Decl., ¶¶ 2, 3 and 7].

There is no evidence that Judge Collins is even aware of the MPC. The MPC contains verified film credit information—identifying producers, directors, editors, and actors/actresses—for *every film from 1952 to 2012* that was considered for an Academy Award or was released in Los Angeles County. [*See* Hanson Decl., ¶¶ 3-6]. The MPC is compiled by the Academy's researchers and is updated continually. [*Id.*] As of 2012, the MPC contained credit information for *over 23,000 films* and had *over 370,000 persons* with verified film credits. [*Id.*]. The 2008 entries note Rachel Collins's appearance in the movie DECEPTION. [*See* Kelly Decl., Exh. G].

Rachel Collins is not a member of the Academy. [Hanson Decl., ¶¶ 8-9]. The Academy does not obtain a person's permission before listing her in the MPC; nobody listed in the MPC database is compensated by the Academy for being listed. [*Id.*].

## III. <u>LEGAL STANDARDS</u>

A party may move to recuse a judge from presiding over a case pursuant to 28 U.S.C. § 144 and/or 28 U.S.C. § 455. In the Ninth Circuit, the test for recusal under both Sections 144 and 455(a) is "[W]hether a reasonable person with knowledge of the all the facts would conclude that the judge's impartiality might reasonably be questioned." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 714 (9th Cir. 1990). The impartiality or bias "must emanate from extrajudicial sources" because to hold otherwise would allow "the prohibition [to] reach far beyond anything Congress could rationally have contemplated." *Partington v. Gedan*, 880 F.2d 116, 133 (9th Cir. 1989), *vacated on other grounds and remanded by* 497 U.S. 1010, 11 S. Ct. 3265. 111 L. Ed. 2d 776 (1990)*, affirmed in relevant part on rehearing by* 923 F.2d 686 (9th Cir. 1991) (citing *U.S. v. Haldeman,* 559 F.2d 31 (D.C. Cir. 1976)).

"[B]ias for purposes of the statute **must be** from an extrajudicial source, and not solely from information gained in the course of the proceedings.   [Citations]. ***Unfavorable rulings alone are legally insufficient to require recusal . . . even when the number of such unfavorable rulings is extraordinarily high on a statistical basis***." *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1341 (9th Cir. 1984) (citations and quotations omitted) (emphasis added).   Recusal is required "only if the bias or prejudice stems from an extrajudicial source," and ***not*** from a judge's conduct or rulings during the course of ***judicial proceedings***.   *King v. U.S. Dist. Court*, 16 F.3d 992, 993 (9th Cir. 1994) (emphasis added).   Although a judge's demeanor and rulings can provide the basis for a claim of error on appeal, they do not provide a basis for disqualification. *Botts v. U.S.*, 413 F.2d 41, 43-44 (9th Cir. 1969).

Opinions formed by a judge based on facts introduced or events occurring in the course of a current or prior proceeding are not a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that makes fair judgment impossible.   *Litekey v. U.S.*, 510 U.S. 540, 556 (1994)   An example of the extreme conduct necessary to establish "deep-seated favoritism or antagonism" is *Berger v. United States*, 255 U.S. 22, 28 (1921), a World War I espionage case against German-American defendants, where the recused judge stated:  "One must have a very judicial mind, indeed, not to be prejudiced against the German Americans 'because their hearts are reeking with disloyalty.'"   *Litekey*, 510 U.S. at 556.

Section 144 requires a "timely and sufficient affidavit" averring that the judge before whom the case is pending "has a personal bias or prejudice" either against the party or in favor of any adverse party. 28 U.S.C. § 144.   The affidavit requirements of § 144 are strictly construed against the movant to prevent abuse.   *Marks v. Askew*, 2012 WL 70623, at *1 (N.D. Cal. Jan. 9. 2012) (citing *Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 718 (7th Cir. 2004)); *see also United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir. 1992) (holding that § 144 affidavits should be strictly construed against the affiant and that movants bear a substantial burden to show actual partiality).   The affidavit

"must be definite as to time, place, persons and circumstances.  Assertions merely of a conclusionary nature are not enough, nor are opinions or rumors.  And the affidavit must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."  *U.S. v. Haldeman*, 559 F.2d 31, 135 (D.C. Cir. 1976) (citations and internal quotations omitted).

## IV.   ARGUMENT

Each of GoDaddy's purported bases for disqualifying Judge Collins are legally insufficient and based on misstatements of the facts and law.

### A.   Cases Involving the Academy's Trademarks, Including this One, Were Properly Found Related by the Numerous Judges Who Agreed to their Transfer

GoDaddy's assertions that the Academy has engaged in an "underhanded attempt over the course of the past fifteen (15) years to secure an advantage to which no litigant is entitled" [Mot., at 14:14-18], and that Judge Collins was "complicit," is silent as to whether the 20 other judges in this District who have transferred Academy cases are also "complicit."  Of course, GoDaddy ignores that it is the transferor judge who in the first instance determines whether a related case should be transferred.

The transfer of cases involving the Academy's marks was a matter of public record.  From the day GoDaddy appeared on June 3, 2010, GoDaddy was aware that the Academy had had multiple cases assigned to Judge Collins since 1999—that information was set forth in the Academy's Notice of Related Case.  [Dkt No. 5].  Despite Local Rule 83-1.3.2—which provides that a party "opposing a related case transfer may, within five (5) days of . . . first appearance, file and serve a short counter-statement setting forth the reasons the action does not qualify for related case transfer"—GoDaddy waited more than 3½ years, and after it has lost substantial rulings, to object to the transfer to Judge Collins.

As a general matter, the assignment and re-assignment of cases is *not* extrajudicial in character.  *Litekey*, 510 U.S. at 556 (routine trial administration is not

-14-
OPPOSITION TO MOTION TO RECUSE JUDGE COLLINS

extrajudicial).  In any event, the current case was properly reassigned to Judge Collins as a related case.

### 1. Relevant Legal Standards for Filing a Notice of Related Case

General Order 224—effective from 1993 until 2007—listed four circumstances for "Related Case Transfers."  One of these four circumstances was when the cases in question "involve the same patent, trademark or copyright," *except* when "other patents, trademarks or copyrights in the case . . . do not cover the same or substantially identical subject matter."  [G.O. 224, at 5.1(2)].  Thus from 1993 until 2007, if two cases involved the same trademarks, they could be related.

Starting in 2007, General Order No. 07-02, instituted the following approach with respect to cases involving intellectual property.  [G.O. 07-02].  It was the "Responsibility of the parties to promptly file a Notice of Related Case" whenever (1) the cases "involve the same patent, trademark or copyright," and (2) one of the other factors identified above in a, b or c also is present."  Those factors were:  "[a] arise from same or closely related transaction or event, [b] "call for determination of the same or substantially related or similar questions of law and fact", or [c] for other reasons would entail duplication of labor if heard by different judges."  [G.O. 07-02]. This approach was mandated by General Order 08-01, as well as by General Order 08-05, relevant here. Local Rule 83-1.3.1 follows the same approach.  Local Rule 83-1.3 also provides that it is a "continuing duty" of an attorney to call related cases to the court's attention.

After a Notice of Related Case is filed, *both* the transferor judge and transferee judge must consent to or decline an order re transfer.  As indicated, nearly 20 Central District judges have transferred Academy trademark cases to Judge Collins.  [*See* Kelly Decl., Exh. F].  Even before Judge Collins, going back decades, the Academy's trademark cases were similarly transferred to Judge Waters.  [Quinto Decl., ¶ 3].

2.      The Academy Properly Filed a Notice of Related Case

Without any analysis, GoDaddy asserts that this case is unrelated to any cases identified in the Academy's Notice of Related Case. [Mot., at 3:23-4:8, and 14:22-15:8; Dkt No. 5]. All these cases concerned the same Academy trademarks as in this case (thus meeting the first requirement of G.O. 08-05).[5]

Moreover, the transfer order properly indicated that the case, "[c]all[s] for determination of the same or substantially related or similar questions of law and fact." As the record in this cases shows, the issues of fact and law in this case substantially overlap those in previous Academy cases for trademark infringement and dilution.[6] These issues include the amount of advertising the Academy has conducted, the recognition and widespread fame of its trademarks, likelihood of confusion/confusing similarity, and dilution. [Dkt No. 491, at 28-29]. For example, the Academy sought partial summary judgment that its marks were famous, a motion that was denied. [*Id.*].

---

[5]    The first Academy trademark case that Judge Collins was randomly assigned to was *Harwood*, back in 1999. Not only do the *Harwood* case and this case involve the same Academy trademarks, but the *Harwood* litigation and this matter *both* involve *cybersquatting* on domain names, including very similar domain names. [*Compare* Harwood's registration of ACADEMYAWARDWINNER.COM, OSCARWINNERS.COM *to* GoDaddy's Parked Pages for certain domain names like OSCARWINNERS.NET, FUTUREOSCARWINNER.NET, and OSCARWINNERSCOMMUNITY.COM. [Dkt No. 1, at 14-15; Liang Decl. Exh. C]. Therefore, both cases also involve common questions of law *and* fact. [*See* G.O. 08-05, Section 5.1.1(b)].

[6]    Although GoDaddy claims that pre-2007 Academy cases were improperly transferred to Judge Collins [Mot., at 4] it ignores that under G.O. 224, Section 5.1(2), if two cases involved the same trademarks, that would suffice to find them related.

GoDaddy's argument that General Order 224 prohibited the relation of cases to previous matters that were closed at least one year after a determination *on the merits* is inapposite. [Mot., at 4:13-16]. G.O. 224 section 5.1.1(a), expressly allowed relation back to cases that were closed *without* a determination on the merits. Most of the Academy cases, including *Harwood*, were resolved by settlement agreements that were entered as stipulated judgments. *See Semtek Int'l Inc. v. Lockheed Martin Corp.* 531 U.S. 497, 501-02, 121 S. Ct. 1021, 1025 (2001) ("an 'on the merits' adjudication is one that actually passes directly on the substance of a particular claim before the court") (internal citation and quotation omitted). Hence, this one year prohibition was inapplicable.

GoDaddy sought partial summary judgment that the Academy's marks were not diluted; a motion that also was denied.  [*Id.*]

The Academy has not attempted to "game" the system; instead, the Academy has properly followed General Orders and Local Rules of the Central District.  GoDaddy's motion, which essentially alleges that nearly 20 judges in the Central District were "complicit" in transferring such cases to Judge Collins, is simply outrageous.

### B.      The June 2013 Rulings and Hearing Do Not Show Any Bias

Judge Collins's rulings on summary judgment and Presbrey, as well as her statements at the June 24, 2013 status conference, were *non*-extrajudicial rulings—they were routine trial administration and ordinary admonishments to counsel.  *Litekey*, 510 U.S. at 556.  Under *Litekey*, they cannot constitute a basis for disqualification because they display no deep-seated favoritism or antagonism that would make fair judgment impossible.  *Litekey*, 510 U.S. at 555-56.

**The Presbrey ruling was perfectly reasonable.**  GoDaddy ignores that two judges found that its own conduct in refusing to admit or deny the authenticity of GoDaddy screenshots played a role in the Academy not designating Presbrey, who was a consultant, as a testifying witness to authenticate these screenshots.  The need to designate Presbrey would have been avoided had GoDaddy simply admitted the obvious—that the screenshots for domain names at issue was generated by GoDaddy's own Parked Pages Program.  [Liang Decl., ¶3, Exh. C].  No GoDaddy witness, when asked at deposition, denied that the parked page s/he was shown was in fact from GoDaddy.  [Liang Decl., ¶5, Exh. D (Undisputed Fact no. 91)].  GoDaddy has yet to submit any evidence that the parked pages at issue are—contrary to what the parked pages themselves state—in fact *not* from GoDaddy.  Hence, GoDaddy's argument that the Academy's "claims fail without Mr. Presbrey" is hyperbole.  [Mot., at 18:14].

Judge Collins' exercise of her discretion not to exclude Presbrey, but to instead allow time for a deposition is not only *not* a basis for recusal, it was fully justified.  [Dkt No. 492, at 11-13].  In her sound discretion, *Hoffman v. Constr. Protective Servs.*,

541 F.3d 1175, 1178 (9th Cir. 2008), Judge Collins found that the "Academy's conduct was at least somewhat induced by GoDaddy's promise to definitively answer the requests for admission." [*Id.*, at 12:22-25].  She noted that, "the record also indicates that GoDaddy did promise the Academy, in response to the Academy's Requests for Admission, that it would admit or deny whether each domain name in issue was in the Parked Pages Program, but that GoDaddy did not timely honor this commitment." [*Id.*, at 12:18-25].[7]  This is consistent with Magistrate Judge Woerhle's previous statement that GoDaddy should admit or deny the authenticity of the screenshots as it said it would do.  [Liang Decl., ¶6, Exh. E (4.30.2013 Hrg Tr, at 19:9-12)].

Furthermore, because Judge Collins had already vacated the trial date in as of early April [Dkt No. 440], permitting GoDaddy to depose Presbrey would "not delay trial" and GoDaddy could cure any prejudice because it would "have the opportunity to depose Presbrey."  [Dkt No. 492, at 13:3-13].  Judge Collins's ruling was perfectly reasonable and within her sound discretion.

**Judge Collins did not encourage the Academy to file a second lawsuit.**  As shown in the fact discussion above, GoDaddy's argument that Judge Collins encouraged the Academy to file and relate a second lawsuit [Mot., at 23-24] is a distortion of the record.

The June 24, 2013 transcript reflects that the Academy's counsel raised the issue of filing a second lawsuit and relating or consolidating it first.  GoDaddy's counsel *then agreed* "that the untimely disclosed domain names should be part of a separate action and shouldn't be part of this lawsuit.  So we would ***agree*** with the Academy on that

---

[7]   While it is not necessary to reconcile such a fact-specific holding with Judge Collins's rulings excluding witnesses in *Accentra* and *Vinotemp*. [Mot., at 19:11-27], those cases are distinguishable.  Neither of those cases involved a situation where the pretrial conference and trial data had been previously vacated.  *Accentra Inc. v. Staples, Inc.*, 2010 WL 8450890, *6-8 (C.D. Cal. Sept. 22, 2010); *Vinotemp Int'l Corp. v. Wine Master Cellars, LLP*, 2013 WL 5366405 at *1-3 (C.D. Cal. Feb. 5, 2013).  Nor did either case involve a situation where the party moving to exclude bore partial responsibility for the other party's delay in designating witnesses.

point." [*Id.* at 8:10-13 (emphasis added)].  It was only *after* this that Judge Collins stated:

> But, of course, it is true I will get the case under the local rules and presuming – as I'm sure I can safely presume that this case is not going to trial, it will be consolidated.  [6.24 Hrg Tr., Exh. B at 8:15-18.]

For GoDaddy to twist this record and claim that "Judge Collins blatantly advised AMPAS how to get around her prior order . . . by simply filing another lawsuit" is so misleading as to be sanctionable [Mot., at 23:19-21].[8]

**<u>Judge Collins did not coerce GoDaddy to settle, but simply indicated that there would be a further settlement process before trial.</u>**  GoDaddy bases its accusations of bias on the following statement by Judge Collins:

> I put settlement in there because it does seem to me that somewhere around here it might be good now that you [found] out how things are going to discuss settlement or to have your settlement conference whether you do that now or after discovery of Mr. Presbrey, whatever.  But it's certainly time to start thinking about that because I think you can see the outlines of the way it's going.  [6.24 Hrg Tr., at 4:14-21].

Again, there was nothing in that statement that evidenced bias.  Judge Collins made this statement after ruling on the parties' cross-motions for summary judgment.  It is perfectly normal for a Court to encourage the parties to mediate again after summary judgment rulings and before trial, especially where the trial date had been vacated.  Indeed, Judge Collins noted that:

---

[8]  GoDaddy seeks to analogize the above statements by Judge Collins to the conduct of the S.D.N.Y. Judge in *In re: Reassignment of Cases*, 736 F.3d 118, 124-25 (2d. Cir. 2013).  However, that case is clearly distinguishable on the facts.  In *In re Reassignment*, a New York district judge advised the parties to craft a lawsuit when it had not yet been suggested.  Here, Judge Collins did not suggest the filing of a new lawsuit—it was already an agreed course of conduct between the Academy and GoDaddy.

The *In re Reassignment* judge was disqualified because she gave interviews to the press which resulted in the publishing of several stories suggesting that the judge was aligned with the plaintiffs.  *Id.* at 127.  The judge described herself as a jurist skeptical of law enforcement.  The judge's clerk also told the press:  "What you have to remember about the judge is that she thinks cops lie."  *Id.*  Here, there has been no similar conduct.

I appreciate that you did one, but that was way too early in the case to count as far as I'm concerned as satisfying your obligation. [6.24 Hrg Tr., at 15:10-13.]

Judge Collins's statements were nothing more than routine statements to counsel concerning required settlement discussions in light of the posture of the case. Such statements are well within a judge's authority under the Federal Rules of Civil Procedure to facilitate the just, speedy, and inexpensive disposition of actions. [*See* Fed. R. Civ. P. 16.] Such statements are a far cry from the "deep seated favoritism or antagonism" discussed in *Litekey* and exemplified in *Berger*.[9]

## C.   GoDaddy's Allegations of Judicial Bias Are Unsupported

Parties engage in consensual and court-ordered settlement processes in virtually every case. In this case, Judge Collins has had no role in any settlement proceeding. The first was arranged by mutual consent of the parties and was held in August 2012. The second was a formal mediation in March 2013—the last day under the pretrial order for it to occur.

GoDaddy's argument rests on an alleged reference by Mr. Quinto to Judge Collins as the "Academy's judge" at the September 2012 settlement conference – a reference that GoDaddy even admits it regarded as "ill-advised posturing." [Kelly Decl., ¶ 21]. In fact, Mr. Quinto has never referred to Judge Collins as "the Academy**'s** judge." [Quinto Decl. ¶¶ 6-8.] Rather, Mr. Quinto referred to her as "the Academy judge" meaning that she had handled the Academy's intellectual property litigation,

---

[9]   The few cases GoDaddy cites in support of its accusations of bias are easily distinguished. *FSLIC v. Dixon*, 835 F.2d 554, 559-60 (5th Cir. 1987), dealt with the ability of a defendant to pay attorney's fees when his assets were frozen by an injunction and did not in any way discuss the recusal of a judge. [Mot., at 22:6-17]. *United States v. Jacobs*, 855 F.2d 652 (9th Cir. 1988) [Mot., at 22:18-28] concerned a trial judge was who disqualified after he "(1) dismissed an indictment summarily and erroneously; (2) refused to reassemble the jury when just two minutes later the mistake was discovered; (3) denied the motion for reconsideration after the government had proven no misconduct; (4) allowed the defendants to file an untimely motion to dismiss; (5) criticized the government's handling of the case in the jury's presence; and (6) offered strategic advice to one defendant's counsel on how to *win* his case." *Jacobs*, 855 F.2d at 656-7 (emphasis added). Judge Collins has not engaged in any such conduct.

was familiar with the Academy's intellectual properties, the 9th Circuit precedent bearing on those properties, and the Academy's desire to resort to litigation only after all attempts to obtain relief amicably have failed.  [*Id.*]  Mr. Quinto did not say or imply that Judge Collins has ever demonstrated favoritism toward the Academy or that she is in any way willing to do the Academy's bidding.  [*Id.*; Singer Decl. ¶ 3 and ¶ 5].  Indeed, the Academy has never even prevailed on summary judgment or at trial in any case assigned to Judge Collins, [Quinto Decl., ¶ 6], a fact which GoDaddy's supposed "investigation" of the public record would show.

There also was an "Academy judge" prior to Judge Collins. [Quinto Decl., ¶ 3]. The Honorable Laughlin E. Waters, Sr. handled virtually all Academy cases from 1987 until 1999.  [*Id.*]  During that time Mr. Quinto referred to *him* as "the Academy judge" for the same reasons that he later referred to Judge Collins as such—namely that Judge Waters had heard a number of Academy cases and was familiar with the Academy's intellectual property.  [*Id.*]  After Judge Waters took senior status in the late 1990s (and passed away in 2002), as GoDaddy recognizes, Judge Collins was simply selected randomly to hear the *Harwood* after Judge Waters.  [Mot., at 3:23-25].  Contrary to GoDaddy's assertions, the Academy did not sample judges until it found one it liked. [Quinto Decl. ¶ 4.]

Aside from the falsity and irrelevancy of its accusation, GoDaddy has blatantly violated the settlement and mediation privileges by bringing this motion and filing an affidavit from its General Counsel that based on speculation about statements made in settlement and mediation.  "Communications to the mediator and communications between parties during mediation are protected."  *Folb v. Motion Picture Industry Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (9th Cir. 1998).  Here, the parties and their counsel all signed the standard JAMS mediation confidentiality forms prior to the March 2013 mediation.  [Singer Decl., ¶4, Exh. B; Liang Decl., ¶8].  Similarly, FRE 408 protects settlement communications from being introduced as evidence.

GoDaddy's motion ignores these rules of settlement and mediation privileges. The Kelly Declaration—which the Academy objects to—repeatedly describes settlement communications, and attaches letters and emails that were clearly under the settlement/mediation privilege, including:  (1) a description of statements made at the Aug. 27 settlement meeting [[Kelly Decl., ¶¶ 19-21], (2) a description of statements made during the March 18 mediation [Kelly Decl., ¶ 22], (3) attaching settlement demand letters that were clearly sent pursuant to the mediation [Kelly Decl., ¶¶ 23-24, Exhs. C and D], and (4) attaching the Sept. 17, 2013 Madison-Sonneborn Email [Kelly Decl., ¶ 25, Exh. E].

## D.   <u>The Inclusion of Judge Collins' Daughter in the Academy's MPC Online Public Database Is Not a Basis to Disqualify</u>

GoDaddy's final speculation is that Judge Collins might be biased because her daughter is included in a database listing of hundreds of thousands of persons on the Academy's website.  Not only is there no evidence that Judge Collins is even aware of the site, but it merely contains verified film credit information—such as producers, directors, editors, and actors/actresses—for *every film from 1952 to 2012* that was either considered for an Academy Award and/or was released in Los Angeles County. [Hanson Decl., ¶¶2-3].  The MPC is compiled by the Academy's researchers and is continually updated.  [*Id.*, ¶¶3-5]  As of 2012, the MPC contained credit information for *over 23,000 films and had over 370,000 persons* having verified film credits.  [*Id.* ¶6] In 2008, this included Rachel Montez Collins' appearance in the movie <u>DECEPTION</u>. [*See* Kelly Decl., Exh. G].

GoDaddy cites no law to support its argument here, nor could it because even the actual *employment* of a judge's child by a party appearing in a case does not warrant recusal, let alone a passing mention on a party's website.  *Datagate Inc. v. Hewlett Packard Co.*, 941 F.2d 864, 871 (9th Cir. 1991); *see also In re Fox West Coast Theatres*, 88 F.2d 212, 226 (9th Cir. 1937) (even if judge's son were employed by the bankrupt, that fact would not disqualify judge from hearing the proceedings).  *See also*

28 U.S.C. Section 455(4) and (5) (listing circumstances when judge should disqualify herself in matters affecting her children).

**E.      GoDaddy's Motion Is Untimely**

GoDaddy's motion is also untimely. Issues of recusal "must be raised at the earliest possible time after the facts are discovered." *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 n.8 (9th Cir. 2000). Even a delay of several months is impermissible. *See United States v. Kelley*, 712 F.2d 884, 887-88 (1st Cir. 1983) (counsel's failure to demonstrate good cause for waiting over three months before filing the motion was sufficient to dismiss).

It was abundantly clear the day this litigation was filed that Judge Collins had handled nearly all of the Academy's trademark cases since 1999. [Dkt No. 5]. No "investigation" by GoDaddy was required to determine that prior cases by the Academy had been transferred as related cases by a number of judges in this District [Mot., at 27:3-6]. All GoDaddy had to do was read the publicly available Notice of Related Case filed by the Academy. [Dkt No. 5].

Although GoDaddy complains of statements allegedly made at a September 2012 settlement conference, it did not move to disqualify then. Nor did it move following statements allegedly made at the March 2013 mediation. Notwithstanding that GoDaddy also objects to Judge Collins's rulings and statements at the June 24th hearing, it did not move to disqualify then either. Instead, GoDaddy continued to participate in the continued summary judgment proceedings regarding whether domain names were confusingly similar or not as a matter of law, resulting in the court's November 4 ruling. [Dkt Nos. 506-507]. Even under GoDaddy's own standard for timeliness—moving before a further substantive issue is decided by the judge [Mot., at 26:24-27:2]—GoDaddy's motion is untimely.

GoDaddy points to a September 17, 2013 e-mail message a Quinn Emanuel lawyer sent to a former KKR executive, William Sonneborn. [Mot., at 27:18-28]. Yet all of the conduct by Judge Collins and the alleged Quinto statement at settlement

1 | occurred far in advance of the September 17 email.  [Mot., at 24-26].[10]  That email

2 | added nothing to GoDaddy's knowledge of the facts.

3 |      In that email, Quinn Emanuel partner Steve Madison briefly summarizes the case

4 | against GoDaddy, noted that Judge Collins has handled prior federal litigations brought

5 | by the Academy—which GoDaddy already knew—and stated "[Judge Collins] ruled in

6 | The Academy's favor on most issues but damages and fees have yet to be determined."

7 | That GoDaddy also knew.  Mr. Madison expressed his belief that it would be "in

8 | everyone's best interest to resolve the matter."  Unsurprisingly, GoDaddy does not

9 | attempt to explain how that e-mail message any way indicates a bias or lack or

10 | impartiality on the part of Judge Collins.

11 |      Moreover, GoDaddy's recusal motion was brought more that 100 days after the

12 | e-mail message was sent.  Thus, GoDaddy's motion presents exactly the type of

13 | "strategic" filings that courts aim to avoid by imposing a timeliness requirement on

14 | recusal motions.  *See Preston v. U.S.*, *923* F.2d 731, 733 (9th Cir. 1991) (holding that

15 | recusal motions must be lodged in a timely fashion to avoid "a heightened risk that

16 | litigants would use recusal motions for strategic purposes.") (internal citations

17 | omitted).[11]

18 |      Even by GoDaddy's own standard for timeliness – requiring the motion to be

19 | filed before further substantive action is taken in the case – GoDaddy's motion is

---

[10]  GoDaddy accuses Quinn Emanuel of improperly contacting Mr. Sonneborn. KKR holds a seat on GoDaddy's Executive Committee. [Mot., at 25:6-16.] However, not only was Mr. Sonneborn formerly employed at TCW (a client of Quinn Emanuel), but Quinn Emanuel understood that Mr. Sonneborn had resigned his position from KKR in July 2013, [*See* Quinto Decl., ¶¶ 10-11, Exh. A], but might be able to assist in settlement.

[11]  GoDaddy claims that in *Preston*, disqualification was affirmed "even though [the] motion to disqualify was filed 18 months after the basis for disqualification came to light." [Mot., at 26:21-24].  This is yet another misstatement.

The recusal motion in *Preston* was "filed approximately [18] months *after the transfer*' of their cases to Judge Letts." *Preston*, 923 F.2d at 933 (emphasis added).  It was undisputed that counsel for the party seeking recusal "did not learn of [Judge Letts' association with the Latham & Watkins law firm] "*until ten days before* the recusal motion was filed." *Id.* (emphasis added).

1  untimely.   GoDaddy waited until after the June 24th hearing, the 2012 and 2013

2  settlement discussions, and proceeded through the summary judgment process on

3  confusingly similarity, culminating in Judge Collins' November 4 ruling, *before* filing

4  this meritless motion.

5  **V.      CONCLUSION**

6         GoDaddy's motion to disqualify a well-respected former Chief Judge of the

7  Central District should be summarily rejected.

8

9  DATED:  January 13, 2014              /s/ Enoch Liang

10                                       BOIES, SCHILLER & FLEXNER LLP
                                         Stuart Singer (*pro hac vice*)
11                                       401 East Las Olas Blvd, Suite 1200
                                         Fort Lauderdale, FL 33301
12                                       Tel: 954-356-0011
                                         Fax: 954-356-0022
13                                       Email: ssinger@bsfllp.com

14                                       FOOTE MIELKE CHAVEZ & O'NEIL,
                                         LLC
15                                       Robert M. Foote (*pro hac vice*)
                                         Kathleen Chavez (*pro hac vice*)
16                                       Matthew Herman (*pro hac vice*)
                                         10 West State Street, Suite 200
17                                       Geneva, IL 60134
                                         Tel: 630-232-7450
18                                       Fax: 630-232-7452
                                         Email: rmf@fmcolaw.com;
19                                       kcc@fmcolaw.com; mjh@fmcolaw.com

20                                       LEE, TRAN LIANG & WANG LLP
                                         James M. Lee (CA Bar No. 192301)
21                                       Enoch H. Liang (CA Bar No. 212324)
                                         601 South Figueroa Street, Suite 3900
22                                       Los Angeles, CA 90017
                                         Tel: 213-612-8900
23                                       Fax: 213-612-3773
                                         Email: james.lee@ltlw.com;
24                                       enoch.liang@ltlw.com

25                                       *Attorneys for Plaintiff The Academy of
                                         Motion Picture Arts and Sciences*

26

27

28

OPPOSITION TO MOTION TO RECUSE JUDGE COLLINS