**WRENN BENDER LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:      amckown@wrennbender.com
             pzecchini@wrennbender.com

Attorneys for Defendant
GODADDY.COM, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>             Plaintiff,<br><br>       v.<br><br>GODADDY.COM, INC., a Delaware corporation; GODADDY.COM, LLC, a Delaware limited liability company,<br><br>             Defendants. | Case No. CV13-08458-ABC (CW)<br><br>**DEFENDANT GODADDY.COM, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>[Federal Rules of Civil Procedure 12(b)(6) and 12(f)]<br><br><u>Hearing</u><br>Date:      February 24, 2014<br>Time:      10:00 a.m.<br>Location:  Courtroom 680 |

## I. INTRODUCTION

In its opposition, Plaintiff Academy of Motion Picture Arts and Sciences ("AMPAS") takes the same position already rejected by this Court – that all words that accompany "oscar" in any domain name are minor or generic and thus, the domain names are always confusingly similar to AMPAS' mark. By regurgitating this same argument, AMPAS again misses the point – the addition of words and their orientation within a domain name string can alter the sight, sound, and meaning of a domain name such that no reasonable person would confuse the domain name with AMPAS' mark. This is precisely the case with each of the twelve (out of 115 total) domain names challenged by GoDaddy.com, LLC ("GoDaddy"). As such, the Court should dismiss each of these twelve domain names from this case.

The Court should also grant GoDaddy's motion to strike AMPAS' request for restitution, pre/post-judgment interest, and attorneys' fees pursuant to its UCL claim. With respect to restitution and pre/post-judgment interest, AMPAS fails to identify a single allegation in its pleading that would entitle it to such relief. Instead, AMPAS argues that because restitution is an available remedy, it should not be stricken regardless of the fact that it has failed to allege facts that, if true, would entitle AMPAS to such relief. Nor does AMPAS attempt to argue that it could amend its pleading to state facts that would entitle it to restitution and pre/post-judgment interest. Absent a scintilla of facts to support this relief, its inclusion is indeed immaterial and impertinent.

Lastly, AMPAS argues that the Court should not strike its request for attorneys' fees under the UCL because such fees may be available under a completely different statute – Section 1021.5 of the California Code of Civil Procedure. This argument fails for two independent reasons: (1) as the court in *Bea v. Southwest Airlines* explained, AMPAS did not allege attorneys' fees under Section 1021.5 and thus, its request for such fees under the UCL must be stricken;

1 and (2) the recovery of attorneys' fees under Section 1021.5 may not be imposed as
2 a reward for litigants motivated by their own interest who happen to coincidentally
3 serve the public, which is precisely what AMPAS argues.
4     GoDaddy respectfully requests that the Court grant its motion in its entirety.
5 **II. ARGUMENT**
6     **A. The 12 Domain Names Challenged Are Not "Confusingly Similar"**
7         **to AMPAS' Marks**
8     In its moving papers, GoDaddy inadvertently typed "and" instead of "or"
9 when quoting J. Thomas McCarthy. AMPAS' opposition seizes on this typo in a
10 specious attempt to claim that GoDaddy "intentionally misquote[ed] authority to
11 make that authority fit its argument." Opposition 6:19-20. GoDaddy did not such
12 thing nor did it need to. The distinction between "and" and "or" is one without a
13 difference.
14     As GoDaddy's motion explains, none of the twelve domain names are
15 confusingly similar to AMPAS' mark in sight, sound, and/or meaning. The addition
16 of words and the orientation of those words within the domain name strings are not
17 merely generic. As the Court noted in its ruling in *AMPAS I*, the addition of words
18 such as "'ramirez' is not a mere generic term appended to the Academy's mark, so
19 'oscarramirez.com' is not analogous to, for example, 'my-washingtonpost.com.'"
20 RFJN, Ex. A at 24:4-6. The same is true with respect to each of the domain names.
21 For example, the addition of "monline" is not a mere generic term appended to
22 AMPAS' mark so as to make it analogous to "my-washingtonpost.com". The sight
23 and sound of "oscarmonline.com" is therefore different in sight and sound of
24 OSCAR. As for meaning, the domain name means Oscar M online. As with
25 "oscarramirez.com", the meaning of "oscarmonline.com" is not confusingly similar
26 to the meaning of AMPAS' marks.
27     The same is true with respect to oscar-w.com, oscar-o.com, and oscar-o.info –
28 all of which add an initial to the proper name Oscar. Unlike the cases AMPAS

relies upon that involved unique marks with no other meanings – Mattel, Coca-Cola, Super-Krete, and Harrod's – AMPAS' mark is a common proper name absent additional context. Here, the mere addition of initials to the common proper name Oscar without more precludes a finding that the domain names are analogous to "my-washingtonpost.com." As the Court previously recognized, "[a]s to meaning, a proper name [and initial] have no meaning except to refer to its bearer. To the extent [oscar-o.com, oscar-o.info, and oscar-w.com have] meaning, that meaning is self-evident: it is a person's name [and initial] registered as a domain name. As such, whatever meaning [oscar-o.com, oscar-o.info, and oscar-w.com have], that meaning is not confusingly similar to the meaning of the Academy's marks." RFJN, Ex. A 24:8-12.

An analysis of the remaining domain names returns the same results – nominatedbyoscar.com, nominatedbyoscar.net, nominatedbyoscar.org, alloscar.com, nightatoscars.com, oscarcap.com, oscarsfilm.com, and twooscars.com. Each of these demonstrate how the origination of the words in the domain name string fundamentally alters the sight, sound, and meaning of the domain names. For example, had each of these domain names included the article "the" in front of "Oscars," they would have a fundamentally different sight, sound, and meaning such that they would be confusingly similar to AMPAS' marks. While the article "the" is not part of AMPAS' mark, it changes the meaning of "oscar" from a proper name to an event or thing. The event or thing "oscar" is what triggers the confusing similarity with AMPAS' marks. Without the article "the," the use of "oscar" is nothing more than a common proper name. As a result, the domain names must contain other words that create a confusing association with OSCAR the trademark. Unlike Coca-Cola, Mattel, Pepsi, or other arbitrary and fanciful marks, Oscar in isolation does not trigger an association with AMPAS' mark.

Not only does each of these domain names exclude the article "the" before "oscar," but the orientation of the words precludes a confusing similarity with

3

OSCAR. For example, nominatedbyoscar means just that: someone or something was nominated by Oscar. Had the domain names been oscarnominations.com, then that orientation of the words would lead a reasonable observer to confuse the domains with AMPAS' mark. Same for nightatoscars.com: the meaning of this domain is unrelated to OSCAR; rather, it means night at Oscar's. Had the domain name been reversed so that it was oscarnight.com, then the domain name would likely meet the confusing similarity test. As such, word orientation is critical to understanding the sight, sound, and meaning and whether those relate at all to AMPAS' mark – a fact AMPAS simply ignores in its opposition.

Because each of the domain names is different in sight, sound, and meaning than AMPAS' marks, GoDaddy respectfully requests that the Court dismiss each from this action.

### B. AMPAS Failed To State Facts That Would Permit Restitution Under the UCL

Rather than identifying a single allegation entitling it to restitution or identifying facts that it could allege in order to trigger restitution under the UCL, AMPAS simply argues that restitution is an available remedy and thus, that is enough to prevent its requested relief from being striken. AMPAS has not, nor can it, allege facts that would entitle it to restitution under the UCL. In fact, AMPAS makes clear that the only money or property GoDaddy received is from persons other than AMPAS. *See* FAC ¶¶ 32-33, 36, 60. Where AMPAS has failed to demonstrate any ability to state a basis for restitution, the inclusion of relief for which it cannot be entitled is immaterial and impertinent to its claims.

AMPAS' request for restitution is nothing more than a request for damages under guised as "restitution." Specifically, AMPAS does not seek to recover monies or property that it paid to GoDaddy because there are none; rather, AMPAS seeks to recover damages for alleged harm caused by GoDaddy's purported activities. *See* FAC ¶¶ 32-33, 36, 60. California law is clear that a plaintiff may not recover

4

damages under the UCL. *See Heighly v. J.C. Penny Life Ins. Co.*, 257 F.Supp.2d 1241, 1259 (C.D. Cal. 2003); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) ("A UCL action is equitable in nature; damages cannot be recovered."). Because AMPAS is not actually seeking restitution, but merely labeling its request to recover damages as "restitution," GoDaddy's motion to strike paragrahs 60, 64, and 69 should be granted. *See Lee Myles Assoc. Corp. v. Paul Rubke Enters., Inc.*, 557 F. Supp. 2d 1134, 1144 (S.D. Cal. 2008) (granting motion to strike plaintiff's demand for "restitutionary damages" under the UCL).

The "restitutionary" relief sought by AMPAS is analogous to the "restitutionary damages" sought by the plaintiff in *Lee Myles*. In *Lee Myles*, "[t]he Complaint [did] not allege that Plaintiff seeks the return of any money or other property Defendants obtained from Plaintiff or in which Plaintiff had a vested interest." *Id.* Rather, the complaint "alleges that Defendants unjustly earned money from their customers by unlawfully using Plaintiff's marks." *Id.* As a result, the Southern District granted defendants' motion to strike plaintiff's request for "restitution" under the UCL.

This is precisely the allegations asserted by AMPAS in its First Amended Complaint. While labeled as "restitution," AMPAS does not seek the return of any money or other property GoDaddy obtained from AMPAS or in which AMPAS has a vested interest. Instead, AMPAS seeks "restitution" for monies unjusutly earned by GoDaddy from GoDaddy's customers in alleged use of AMPAS' marks as well as for the harm caused by such use. *See* FAC ¶¶ 60, 64, and 69. Thus, like the Southern District, the Court should strike AMPAS' request for "restitution" as well as its request for pre-and post-judgment interest on such "restitution."

### C. Attorneys' Fees Are Not Recoverable Under the UCL

AMPAS concedes that it is not entitled to recover attorneys' fees under the UCL. *See* Opposition 14:4-5. Nonetheless, AMPAS claims that it can recover attorneys' fees under a completely separate statute – Section 1021.5 of the Code of

5

REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO STRIKE

Civil Procedure. *See id.* at 14:5-11. As a result, AMPAS argues that the Court should deny GoDaddy's motion. AMPAS' argument fails for two reasons: (1) the federal courts have already rejected this exact argument in granting motions to dismiss a request for attorneys' fees under the UCL; and (2) AMPAS' own opposition demonstrates that the public benefit purportedly conferred is ancillary to the private right it is seeking to enforce. As such, attorneys' fees under Section 1021.5 are not recoverable.

### 1. AMPAS Did Not Assert A Claim For Attorneys' Fees Under Section 1021.5

AMPAS makes the same argument in its opposition that was expressly rejected by the Northern District in *Bea v. Southwest Airlines Co.* In *Bea*, defendants moved to strike plainitff's claim for attorneys' fees pursuant to the UCL. *See Bea v. Southwest Airlines Co.*, 2005 WL 646074 at *5 (N.D. Cal. 2005). After recognizing the well-established rule that attorneys' fees are not recoverable under the UCL, the Northern District explained that "Plaintiff's Motion in Opposition includes, for the first time, an allegation that he is entitled to attorney's fees pursuant to California Civil Code section 1021.5." *Id.* Because "Plaintiff's complaint does not include a claim for attorney's fees under section 1021.5 . . . the Court GRANTS Defendants' Motion to Dismiss Plaintiff's prayer for attorney's fees pursuant to California Business and Professions Code section 17200 without leave to amend." *Id.* at *6. The same result is required here.

Like the plaintiff in *Bea*, AMPAS' First Amended Complaint does not include a claim for attorneys' fees under Section 1021.5. Rather, AMPAS clearly seeks to recover attorneys' fees under the UCL. Because attorneys' fees are not recoverable under the UCL and because AMPAS did not assert a claim for atttorneys' fees under Section 1021.5, GoDaddy's motion to strike all references to attorneys' fees under the UCL should be granted.

///

6

### 2. AMPAS Has Not Alleged Facts Entitling It To Attorneys' Fees Under Section 1021.5

Not only should the Court strike AMPAS' request for attorneys' fees under the UCL, but AMPAS should not be permitted an opportunity for leave to amend its complaint to add a claim for attorneys' fees under Section 1021.5. The reason is that AMPAS has alleged facts that bar the recovery of attorneys' fees under Section 1021.5.

Section 1021.5 codifies the "private attorney general" doctrine under which attorney's fees may be awarded to successful litigants. *See Punsly v. Ho*, 105 Cal.App.4th 102, 109 (2003). This doctrine is intended to "encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where statutory or constitutional rights have been violated." *Bell v. Vista Unified School Dist.*, 82 Cal.App.4th 672, 690 (2000).

Three criteria are required to support an award of attorney's fees under Section 1021.5: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit was conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement were such as to make the award appropriate. *See Abouab v. City and County of San Francisco*, 141 Cal.App.4th 643, 663. "While the public always derives some benefit when illegal private or public conduct is rectified, the Legislature did not intend to authorize an award of fees under § 1021.5 in every lawsuit enforcing a constitutional or statutory right." *Mannick v. Kaiser Foundation Health Plan, Inc.*, 2007 WL 2892647, *5 (N.D. Cal. 2007). The statute specifically provides for an award only when the lawsuit has conferred "a significant benefit" on "the general public or a large class of persons." *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 635 (1998).

Recognizing the need to limit the recovery of attorney's fees under Section 1021.5 to matters truly in the public's interest, California courts have made clear

1 that "Section 1021**.**5 is intended as a 'bounty' for pursuing public interest litigation,
2 **not a reward for litigants motivated by their own interest who coincidentally**
3 **serve the public**." *California Licensed Foresters Ass'n*, 30 Cal.App.4th 562, 570
4 (1994) (emphasis added). "The private attorney general theory recognizes citizens
5 frequently have common interests of significant societal importance, but which do
6 not involve any individual's financial interests to the extent necessary to encourage
7 private litigation to enforce the right. To encourage such suits, attorney's fees are
8 awarded when a significant public benefit is conferred through litigation pursued by
9 one whose personal stake is insufficient to otherwise encourage the action." *Id.*
10 AMPAS has not, nor can it, meet the public interest requirement.

11 Contrary to AMPAS' contention, a trademark owner's attempt to enforce its
12 trademark rights does not meet the requirements for the recovery of attorneys' fees
13 under Section 1021.5. While there may be some benefit to the public conferred if
14 AMPAS is successful on its claims, that benefit is incidental to AMPAS' interest in
15 policing its own trademarks. Indeed, AMPAS' self-serving motivation is evidenced
16 by the fact that AMPAS makes no effort to allege facts demonstrating any actual
17 harm to the public or any specific public benefit anywhere in its pleadings. Nor
18 does AMPAS identify a single court that has permitted the recovery of attorney's
19 fees under Section 1021.5 for a brand owner's attempt to police and enforce its own
20 trademarks. Given the nature of the allegations and claims asserted by AMPAS,
21 AMPAS has not nor can it satisfy the requirements for the recovery of attorney's
22 fees under Section 1021.5.

23 **III.   CONCLUSION**

24 For all the foregoing reasons, GoDaddy respectfully requests that the Court
25 (1) dismiss the twelve domain names challenged herein; and (2) strike AMPAS'
26 / / /
27 / / /
28 / / /

requests for restitution, damages, pre and post-judgment interest, and attorney's fees under the UCL.

Dated: February 10, 2014       **WRENN BENDER LLLP**

By: /s/ *Aaron M. McKown*
     Attorneys for Defendant
     GODADDY.COM, LLC

REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO STRIKE

# CERTIFICATE OF SERVICE

Pursuant to L.R. 5-3, I hereby certify that on February 10, 2014, I electronically filed the foregoing document, **DEFENDANT GODADDY.COM, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**, with the Clerk of the Court by using the CM/ECF system and that the foregoing document is being served on all counsel of record identified below via transmission of Notice of Eletronic Filing generated by CM/ECF:

| | |
|---|---|
| Enoch H. Liang<br>James M. Lee<br>**Lee Tran & Liang APLC**<br>601 South Figueroa Street, Suite 3900<br>Los Angeles, CA 90017 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 213-612-3737<br>Fax: 213-612-3773<br>E-mail: jml@ltlcounsel.com;<br>ehl@ltlcounsel.com |
| Stuart Singer<br>**Boies, Schiller & Flexner LLP**<br>401 East Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301 | Phone: 954-356-0011<br>Fax: 954-356-0022<br>E-mail: ssinger@bsfllp.com |
| David Michels, Esq.<br>David L. Zifkin, Esq.<br>**Boies, Schiller & Flexner LLP**<br>401 Wilshire Blvd., Suite 850<br>Santa Monica, CA 90401 | Phone: 310-752-2400<br>Fax: 310-752-2490<br>Email: dzifkin@bsfllp.com;<br>dmichaels@bsfllp.com |
| Robert M. Foote<br>Kathleen Chavez<br>Matthew Herman<br>**Foote, Mielke, Chavez & O'Neil LLC**<br>10 West State Street, Suite 200<br>Geneva, IL 60134 | Phone: 630-232-6333<br>Fax: 630-845-8982<br>E-mail: rmf@fmcolaw.com;<br>kchavez@fmcolaw.com; and<br>mherman@fmcolaw.com |

Executed on February 10, 2014, at Irvine, California.

_____
CARLIE PEISLEY

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614